Rockingham
No. 86-178

THE STATE OF NEW HAMPSHIRE

v.

ALFRED F. COTE

June 3, 1987

*Stephen E. Merrill,* attorney general (*William H. Lyons,* assistant attorney general, on the brief and orally), for the State.

*John A. Macoul* and *Barbara A. Fielden,* of Salem (*Mr. Macoul* and *Ms. Fielden* on the brief, and *Mr. Macoul* orally), for the defendant.

JOHNSON, J.   The defendant appeals three misdemeanor convictions for sexual assault and alleges numerous errors by the Trial Court (*Nadeau,* J.). The following issues are presented for our review: (1) whether, under the circumstances of this case, the trial court erred in denying the defendant's motion to suppress statements made by him to a police officer and welfare official, in the welfare official's office, and subsequent statements to the same police officer at the Londonderry police station; (2) whether the trial court erred in allowing the State's motion to vacate prior orders granting discovery in six cases of sexual assault, five of which were consolidated with the three cases being appealed; (3) whether the trial court erred in consolidating the eight sexual assault charges which were tried; (4) whether, under the circumstances of this case, the trial court erred in refusing to give a jury nullification charge; (5) whether the defendant's motion for a directed verdict and/or to set aside the verdict should have been granted; (6) whether the trial court erred in denying the defendant's motion for a new trial based upon newly discovered evidence; and (7) whether, under all of the circumstances of this case, the trial court committed an abuse of discretion in sentencing. We affirm the defendant's conviction, but vacate his sentence and remand for resentencing.

The defendant was initially charged under various indictments and misdemeanor informations alleging sexual misconduct on his part. He was accused of aggravated felonious sexual assault on a minor in Nottingham on or about August 17, 1984. He was also indicted for aggravated felonious sexual assault and charged with four misdemeanors of sexual assault on a Sunday morning in September, 1984, after he allegedly took the victims to a speedway in Epping and returned to an ambulance building in Danville, the alleged situs of the crimes. Finally, he was charged with three misdemeanor informations alleging sexual contact with minors on or about September 1, 1984, while sleeping in a tent with the three victims in Londonderry. Prior to trial, the State entered *nolle prosequi* on the Nottingham assault indictment, the alleged victim having denied that the crime occurred. The remaining eight charges were consolidated and tried together, over the defendant's objection.

Prior to the filing of formal charges relating to any of the above allegations, the defendant was telephoned by Cynthia Herman, a social worker, who requested that he come to her office. The defendant did so on November 30, 1984, apparently under the belief that he would be discussing his family and stepchildren. To his apparent surprise, Officer Ryan of the Londonderry Police Department was present at Herman's office, in order to question him regarding sexual misconduct.

Officer Ryan gave the defendant his *Miranda* warnings, and offered to leave if the defendant wished him to do so. The defendant, who was unrepresented by counsel at the time, allowed Officer Ryan to remain, and made several statements at the meeting after apparently waiving his rights. He then left of his own volition, as he had come. The defendant was under medication at the time.

The next day, the defendant went to the Londonderry police station at Officer Ryan's request. He was met at the door by Ryan, who arrested him, gave him his *Miranda* rights, and requested a statement concerning the issues discussed the day before. Officer Ryan subsequently typed a two-page report, which the defendant allegedly signed. Formal charges were filed and, after a suppression hearing, the trial court refused to suppress the statements elicited at both meetings.

In addition to his motion to suppress, the defendant filed pre-trial motions for discovery and a bill of particulars in the six docketed cases not involved in this appeal, although five of them were tried therewith. These motions were granted by the Superior Court (*Thayer*, J.) on April 8, 1985, after the State's failure to object within ten days of filing. On May 7, 1985, the State at last filed a motion to vacate the defendant's discovery orders, which motion was granted by the Trial Court (*Nadeau*, J.) on May 27, 1985, after a hearing at which the defendant duly objected.

Over the defendant's objection, all eight cases were consolidated for trial. The jury returned a verdict of not guilty to the five Danville charges. As to the charges which are the subject of this appeal, Matthew D. testified that on the night the defendant's daughter was born (August 31, 1984), the defendant slept with Matthew and his brother Mark, in a tent behind the boys' residence in Londonderry. The defendant had been invited to do so by the boys' parents, who were home at the time. Matthew testified that at that time, over a period of minutes, the defendant touched Matthew's penis and that Matthew touched the defendant's penis, with each having an erection. Mark D. testified that the defendant touched Mark's penis at about the same time.

There was evidence that the boys may have been upset over other matters with the defendant, who was their former scoutmaster. It also appeared that the boys did not complain immediately about the incident.

The defendant alleged that he had little or no recollection of the incidents, and called ten witnesses in support of an alibi defense. One of these witnesses testified that he saw the defendant at the Parkland Medical Center around 8:00 p.m. on the evening of his daughter's birth. Another witness testified that he saw the defend-

ant at the Danville Ambulance Service around midnight on the evening in question. The defendant also introduced telephone billings alleged to represent calls made by him from the ambulance service after midnight of the night his daughter was born.

The jury returned a verdict of guilty of the three Londonderry charges. The defendant's motion to poll the jury was denied; this issue, however, was not raised by the defendant on appeal and hence is waived.

Based upon various factors, including a probation report, the trial court sentenced the defendant to the maximum one-year sentence for each of the three offenses, the sentences to run *consecutively*. The court remarked at the sentencing hearing that it had found that the defendant's conduct did not represent an isolated incident.

On April 1, 1986, the defendant's motions to reconsider and to set aside the verdict were argued. The trial court denied both motions, and on July 1, 1986, a hearing was held on the defendant's motions for a new trial and to revise, revoke and/or reconsider sentencing. Both motions were also denied, and this appeal was brought.

We first address the defendant's argument that the statements made by him at the welfare office should have been suppressed, as products of an illegal custodial interrogation. The defendant raises claims under both the United States and New Hampshire Constitutions. We will consider the defendant's State constitutional argument first. *See State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983). However, we find the federal case law on the question instructive, and will therefore use it as an aid to the interpretation of our own constitution. *See Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983). We need not consider this argument at length, however, because we find that the defendant was not in custody at the time the statements in the welfare office were made.

■ New Hampshire citizens are entitled to protection from unreasonable searches and seizures: "Every subject hath a right to be secure from all unreasonable searches and seizures of his person, his house, his papers, and all his possessions. . . ." N.H. CONST. pt. I, art. 19. "[W]e interpret part I, article 19 to reflect the intent of the framers that all searches and seizures must be reasonable." *State v. Ball, supra* at 234, 471 A.2d at 352.

■■ Before these constitutional protections attach, however, a person must have been "seized." "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19

n.16 (1968). In *State v. Riley,* 126 N.H. 257, 263, 490 A.2d 1362, 1366 (1985), this court adopted the objective test articulated in *United States v. Mendenhall,* 446 U.S. 544 (1980), for the determination of whether a seizure has occurred. We must ask whether, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall, supra* at 554.

In this case, we think it clear from all the circumstances that the defendant had not been seized at the time he was questioned in the welfare office, and that therefore no violation of his rights occurred. Officer Ryan, before questioning the defendant, offered to leave, but the defendant allowed him to remain. It is not enough to establish a seizure "that the person asking the questions was a law enforcement official." *Mendenhall, supra* at 555. Further, not only was the defendant Cote in fact free to leave, but he did indeed "go his way" at the end of the interview. Here, Cote acted "voluntarily in a spirit of apparent cooperation with the officer's investigation." *Sibron v. New York,* 392 U.S. 40, 63 (1968). "As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *Mendenhall, supra* at 554. Nor was the questioning in this case inherently coercive. Officer Ryan displayed no weapon and employed no force. The questioning took place not in a police station or jail cell, but in the office of a social worker. The record does not support the contention that the defendant had any objective reason to believe that he was not free to end the conversation and proceed on his way, and therefore no seizure occurred. Thus, since there was no "arrest" or taking into custody during the questioning of the defendant at the welfare office, we need not determine whether the encounter was legal or justified. We hold that the trial court did not err in denying the defendant's motion to suppress the defendant's oral statements on November 30, 1984. Since we find that the Federal Constitution provides no greater protection, we need not conduct an independent federal analysis here. *See Ball,* 124 N.H. at 232, 471 A.2d at 351.

We next address the defendant's argument that his questioning at the Londonderry police station on December 1, 1984, following his arrest violated his constitutional privilege against self-incrimination under the fifth and fourteenth amendments to the United States Constitution, and part I, article 15 of the New Hampshire Constitution. We consider the defendant's State constitutional argument first. *See Ball,* 124 N.H. at 231, 471 A.2d at 350. At the outset, we of

course reject the defendant's argument that his statement at the police station was the product of an illegal arrest the day before, having found that no such "arrest" occurred. Since we find that the police officer had probable cause to arrest the defendant based, *inter alia*, upon his oral statements in the welfare office on November 30, the only question we need answer is whether the defendant's written statement at the police station was preceded by a knowing, voluntary and intelligent waiver of his rights. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

In this case we think that the totality of the circumstances supports the trial court's finding that the waiver was voluntarily made. First, we reject the defendant's argument that he did not go to the police station voluntarily because he was "deceived" into thinking he was only going to take a lie detector test. The police officer testified that he could not recall mention of a lie detector test. Further, even if the defendant had subjectively believed that he was going to the police station to take such a test, he still went there of his own volition. At the very most, he went at the officer's request. This is not tantamount to coercion, and the defendant was not in custody until he was arrested by Officer Ryan upon his arrival at the police station.

While there was evidence that the defendant was dyslexic and under medication, there was also testimony that he had an associate's degree in medicine, had taught at the vocational school level, and had done law-enforcement-related work. There was testimony at the suppression hearing that the defendant said he understood his rights and marked the *Miranda* form accordingly. There was also evidence that the defendant told the officer that he wished to waive his *Miranda* rights and marked the form indicating that he wished to waive his rights. The officer testified that the defendant answered questions and appeared to understand his rights.

■■ Applying the reasonable doubt standard, the trial court made an express finding that the defendant knowingly waived his rights and made his statements voluntarily. The testimony on the issue was conflicting, and in such circumstances the trial judge is charged with assessing the witness's credibility. *State v. Noel*, 119 N.H. 522, 526, 404 A.2d 290, 292 (1979). From our review of the record of the suppression hearing, we conclude that there was sufficient evidence to allow the judge to determine that the State had sustained its burden of proof. Therefore, the trial court's finding will not be overturned.

We next consider whether the trial court erred in vacating the prior order granting the defendant's motion for discovery and a bill

of particulars. The inquiry need not detain us long, because neither the defendant's motions for discovery and for a bill of particulars, nor the trial court's orders pertaining to those motions, were filed in any of the three cases on appeal. Although some of the cases in which the discovery orders were entered were tried in the same proceeding as the cases under review, none of these cases resulted in a conviction. We therefore do not reach the merits of the defendant's contention that denial of his motion for a bill of particulars denied his rights to due process of law and effective assistance of counsel, because the issue was not raised below. *See State v. Westover*, 127 N.H. 130, 131, 497 A.2d 1218, 1219 (1985).

We now reach the question of whether the trial court erred in granting the State's request to consolidate for trial all of the sexual assault charges brought against the defendant. We note at the outset that the resolution of consolidation questions lies within the sound discretion of the trial court and that, in the absence of a showing of an abuse of this discretion, its ruling will not be disturbed on appeal. *State v. Lainey*, 117 N.H. 592, 595, 375 A.2d 1162, 1164 (1977).

In determining whether consolidation in a given case was proper, we must ask whether the evidence in support of each offense was brief, simple and unlikely to confuse a jury, and easily referable to each crime. *State v. Winders*, 127 N.H. 471, 473, 503 A.2d 798, 799–800 (1985). A review of the record in this case makes clear that the evidence and testimony, while extensive, was not unduly lengthy. In all, the State called ten witnesses, while the defendant called eleven witnesses, including the defendant. Most of this testimony related to all eight charges, and the testimony in support of each separate offense was not protracted.

Further, the evidence in support of each offense was simple. In the main, it consisted of direct testimony by the three complaining witnesses and the arresting officer, and statements made by the defendant. The facts which the State was required to prove to establish each offense were not complicated.

As Judge Learned Hand noted in *United States v. Lotsch*, 102 F.2d 35, 36 (2d Cir.), *cert. denied*, 307 U.S. 622 (1939), "[w]hen the accused's conduct on several separate occasions can properly be examined in detail, the objection [to joinder] disappears, and the only consideration is whether the trial as a whole may not become too confused for the jury." In view of the relative simplicity of the evidence in each of these consolidated cases, we cannot say that joinder likely resulted in jury confusion.

Finally, we think that the record indicates that the evidence in

these cases was easily referable to each crime. The conduct involved was specifically outlined, and involved distinct assaults. Further, the trial court was careful to caution the jury to consider each offense separately. This is not an irrelevant consideration. *See State v. Chickering*, 97 N.H. 368, 370, 89 A.2d 206, 207 (1952) (jurors are presumed to follow instructions); *see also United States v. Adams*, 434 F.2d 756, 759–60 (2d Cir. 1970). Indeed, the jury did in fact reach a verdict of not guilty in five of the eight cases that were consolidated.

■ We reject the defendant's argument that the consolidation of the charges caused the jury to "compromise" by finding the defendant guilty of some charges but not others. The court's instructions were clear, and the jurors are presumed to have followed them. The totality of the circumstances indicates that they did so. We hold that the trial judge acted properly in granting the State's motion to consolidate, and that the defendant's constitutional rights were not violated.

■ We now consider whether the trial court's failure to instruct the jury regarding its jury nullification prerogative constituted error. The concept of jury nullification is well established in this country. "If the jury feels that the law under which the defendant is accused is unjust, or that exigent circumstances justified the actions of the accused, or for any reason which appeals to their logic or passion, the jury has the power to acquit, and the courts must abide by that decision." *United States v. Moylan*, 417 F.2d 1002, 1006 (4th Cir. 1969), *cert. denied*, 397 U.S. 910 (1970); *State v. Weitzman*, 121 N.H. 83, 89, 427 A.2d 3, 7 (1981). However, "the fact that a jury does have this prerogative to disregard the instructions of a court, even as to matters of law, 'does not . . . establish as an imperative that [a] jury must be informed by the judge of that power.'" *State v. Mayo*, 125 N.H. 200, 203, 480 A.2d 85, 87 (1984) (quoting *United States v. Dougherty*, 473 F.2d 1113, 1136 (D.C. Cir. 1972)). After all, "jury nullification is neither a right of the defendant . . . nor a defense recognized by law." *Mayo supra.*

■ In this case, the trial court informed the jury that it *should* convict, not that it must, if the State met its burden. We hold that the trial court did not abuse its discretion in refusing to give a specific instruction on the nullification prerogative.

■■ We now consider whether the trial court erred in denying the defendant's motion for a directed verdict and/or to set aside the verdict. In ruling on such a motion, the court is to consider the evidence and all reasonable inferences therefrom in the light most

favorable to the State. *See State v. Bemis*, 127 N.H. 490, 491, 503 A.2d 789, 790 (1985). Unless the defendant is able to establish that no reasonable trier of fact could have found beyond a reasonable doubt that the defendant committed the crime charged, the conviction must stand. *State v. Martin*, 121 N.H. 1032, 1033–34, 437 A.2d 308, 309 (1981).

The defendant argues that the evidence was insufficient to convict because it did not support the State's assertion that the events in question took place on August 31, 1984. Our review of the record, however, does not convince us that the State exclusively limited its case to August 31. The indictment charged the defendant with sexual assault in Londonderry "on or about" September 1, 1984. Although it appears that at trial the State focussed upon August 31, being the night that the defendant's daughter was born, the State's burden of proof required only that it prove beyond a reasonable doubt that the defendant knowingly engaged in sexual contact with the victims and that they were less than 13 years old.

Moreover, even if it could be found that the State limited its case to August 31 and no other date, we find that the evidence could support the verdict. The State offered the testimony of the victims, Matthew D. and Mark D. Each testified to sexual contact in the form of masturbation which occurred in the tent behind the boys' residence in Londonderry. Their testimony was corroborated by their mother, who testified that on the date that the defendant's daughter was born, the defendant slept in the tent behind her house with the boys. The defendant stated to Cynthia Herman and Officer Ryan that he may have slept in the tent with the boys. The defendant offered evidence of an alibi. He testified that although he had no recollection of where he spent the evening on which his daughter was born, he recalled his wife giving him a list of people's phone numbers with instructions to call these people to inform them of the birth. The defendant's mother produced bills for long distance telephone calls made from the Danville Ambulance Service on September 1, 1984, although she had no personal knowledge of who made those calls. The defendant's witnesses also included Wellington Bartels, IV, who testified that he saw the defendant at the Danville Ambulance Service around midnight on the evening in question.

The jury is to determine the credibility of witnesses and the weight to be given their testimony. *State v. McAvenia*, 122 N.H. 580, 582, 448 A.2d 967, 968 (1982). The jury was free to reject the defendant's alibi defense and accept the testimony of those witnesses who saw him in Londonderry. The court will defer to the determination of the trier of fact unless no reasonable person could have

arrived at the same conclusion after weighing the conflicting evidence. *State v. Smith*, 127 N.H. 433, 436–37, 503 A.2d 774, 776 (1985). Reviewing the evidence in the light most favorable to the State, it is clear that a reasonable trier of fact could have found the defendant to have committed the crimes alleged, and we so hold.

██ ██ Next we consider the defendant's contention that the trial court erred in denying his motion for a new trial based upon newly discovered evidence. The defendant argues that, in denying his motion for a new trial based upon his offer of proof, the trial court denied him a fair trial in violation of the fourteenth amendment to the United States Constitution and part I, article 15 of the New Hampshire Constitution. "The granting or denial of a new trial, after notice and an opportunity to be heard, is in the discretion of the [trial] court . . . ." *Burroughs v. Wynn*, 117 N.H. 123, 125, 370 A.2d 642, 644 (1977). In this case, a hearing was held on the motion for a new trial, and the question presented to us is therefore one of abuse of discretion. *Id.* at 125–26, 370 A.2d at 644. The guidelines for the exercise of this discretion are set out in *Rautenberg v. Munnis*, 109 N.H. 25, 26, 241 A.2d 375, 376 (1968), and include: "(1) that the moving party was not at fault for not discovering the evidence at the former trial; (2) that the evidence is admissible . . . , material to the merits, and not cumulative; and (3) that it must be of such a character that a different result will probably be reached upon another trial." (Citations omitted.) We need not detain ourselves with the last two of these guidelines, because we hold that the trial court did not abuse its discretion in finding that the evidence offered by the defendant at the hearing on the motion was not "newly discovered."

The names of the defendant's "newly discovered" witnesses appeared in the list of alibi witnesses submitted by the defendant in advance of trial. We do not see why the defendant, who apparently did not interview these witnesses before trial, can claim that he is entitled to a second trial based upon what he later found out that they would say. The trial having been prepared for and completed, it cannot be maintained that the defendant can continue to call any of the 100 odd witnesses on his alibi list as soon as he happens to "discover" that their testimony may have substantive value.

██ ██ We reject the defendant's argument that the vagueness of the indictments as to a specific date unfairly prejudiced his efforts to determine which witnesses to call. As we have already noted, the specific date is not an element of the offense of sexual assault. *See State v. Boire*, 124 N.H. 622, 624, 474 A.2d 568, 569 (1984). The trial judge, having presided at the trial, determined that

the indictments and discovery made clear the circumstances under which the crimes were alleged to have been committed, and that the defendant's "newly discovered evidence" was less newly discovered than newly relied upon. We hold that the trial court acted within its discretion in denying the defendant's motion for a new trial in this case.

The defendant argues that the procedures followed with respect to the presentence probation report were improper. Specifically, he alleges that his constitutional rights to due process and effective assistance of counsel under part I, article 15 were violated because (a) the probation report was "prosecution oriented" and was compiled with reference to certain documents to which he was denied access, and (b) he was not able to review the report until the afternoon before the sentencing hearing. We reject these contentions.

■■■ A misdemeanant in New Hampshire has no statutory or constitutional right to a presentencing report, *see* RSA 651:4, although it is the usual practice in this State to order such a report if requested by counsel, R. MCNAMARA, 2 NEW HAMPSHIRE PRACTICE, CRIMINAL PRACTICE & PROCEDURE § 873, at 85–86 (1980). Where such a report is made, the court is required "to take such steps as may be necessary so that the defendant is advised, by his counsel or otherwise, as the situation warrants, of the factual contents of any presentence investigation, and afforded a fair opportunity to controvert them. The sources of confidential information need not, however, be disclosed." RSA 651:4, II. Superior Court Rule 112 provides in pertinent part:

> "In criminal cases, the contents of the reports of Probation Officers will not be disclosed to anyone except as required by statute or ordered by the Court. Before the passing of sentence, counsel for the defendant and for the State will both be afforded a reasonable opportunity to rebut any material matter contained therein which might bear on the sentence."

The defendant has not directly addressed the constitutionality of these provisions, and since we find them substantially complied with in this case, we do not reach the constitutional issue.

■■■ The defendant's argument that the presentence report was improper because it was "prosecution oriented" is without merit. In New Hampshire, "[t]here are no formal limits on presentence reports. The report may contain references to a defendant's juvenile record, to prior felony convictions and charges, which did not result in conviction, and may rest upon hearsay." MCNAMARA,

*supra* at 86. The use in this case of a probation report that may have been compiled with primary reference to the prosecutor's file does not constitute error. However, in view of the fact that this case is remanded for a new sentencing hearing, we would require the court to ignore unsubstantiated, unverified statements made in the probation report. Reliance in any degree upon conclusory remarks, unless based upon facts contained in the report, deprives the defendant of the opportunity to rebut them provided by Superior Court Rule 112.

■■■ The court in its discretion withheld certain documents from the defendant that it determined were privileged. The fact that the probation officer may have relied upon such information in compiling his report does not render the report improper. Indeed, RSA 651:4, II expressly provides that in the context of presentence reports, "[t]he sources of confidential information need not . . . be disclosed." Further, while Superior Court Rule 112 gives the defendant the right to review the presentence report itself once it is compiled, it does not give the defendant the right to view all the data, privileged or not, that the probation officer utilizes to compile the report. In this case, the defendant was provided access to the report itself, and that is all the rule requires.

■■■ Finally, we find that the filing of the probation report was not untimely in view of RSA 651:4, II. The statute vests in the trial court the discretion to "take such steps . . . as the situation warrants," to see that the defendant is advised of "the factual contents of any presentence investigation, and afforded a fair opportunity to controvert them." We cannot say that the defendant was denied a fair opportunity to rebut the probation report in this case. The report was filed with the court on the Monday before the Wednesday sentencing hearing, and the defendant was notified at the time the report was filed. Further, the defendant apparently made no motion for more time to rebut the information contained in the report, and to this extent has waived his timeliness claim on appeal. In any event, we hold that the statute was substantially complied with in this case. *See, e.g., State v. Schulte,* 119 N.H. 36, 39, 398 A.2d 63, 65 (1979).

We now consider whether the trial court erred in this case when the court, apparently referring to evidence regarding the five charges of which the defendant was acquitted by the jury, based its sentencing in part upon its conclusion that the criminal conduct of which the defendant was found guilty did not involve an isolated incident. It is a question which implicates basic policies and presumptions of our judicial system, and thus is not easily answered. Nor can we turn to any great wealth of authority in this jurisdiction

for guidance on the subject. We choose therefore to approach the question cautiously, bearing the specific facts of this case alone in mind.

We begin by noting what we consider to be an important consideration in this case. In 1975, the New Hampshire Legislature enacted RSA 651:57, *et seq.*, which provide for a review of sentences imposed by trial courts in felony cases. The statute provides for comprehensive review of criminal sentences, allowing input from the trial judge, RSA 651:58, III; and it allows the sentence review division to adjust the sentence in either direction based upon what it considers the equities of the situation. RSA 651:58, II; SUPER. CT. SENTENCE REV. DIV. R. 14.

RSA 651:58 provides: "Any person sentenced to a term of one year or more in the state prison . . . may file . . . an application for review of the sentence by the review division . . . ." However, Sentence Review Division Rule 13 of the Superior Court Rules, designed to delineate the sentences subject to review, provides that "[s]entences may be reviewed that *exceed* one year in the State Prison. . . ." (Emphasis added.) Thus none of the three sentences imposed for any of the three misdemeanors here is afforded the remedy of sentence review. We therefore feel compelled to scrutinize these three misdemeanor sentences with a sharp eye.

The defendant was convicted of three misdemeanors, and was acquitted of five other charges. The three offenses resulting in conviction all occurred on the same date, at one time, and over a very brief period. The trial judge nevertheless imposed a maximum sentence for each offense, after noting that the defendant's conduct did not represent an isolated incident, possibly relying to some degree upon evidence submitted regarding the five cases which resulted in acquittals. Although it is unclear whether the court relied upon the probation report or the evidence adduced at trial, or both, we find error in any case to the extent that evidence in the acquittals may have been considered in sentencing.

First, we do not accept the State's argument that the trial court found that the Danville acts occurred, but not on the date in question. The State bases this contention on the court's order denying the defendant's motion for a new trial, in which the judge wrote in part that "[t]he defendant's attempt to convince the jury that the [S]tate failed to prove acts occurred at the Danville ambulance building in the month of September on a Saturday night was successful." We do not think this language supports the contention that either the trial court or the jury found that the acts occurred, but on some other date. We are thus presented with the clear question whether the

trial court erred in considering evidence regarding five charges of which the defendant had been completely acquitted.

It is of course well settled in most jurisdictions that a trial court may consider evidence of pending charges, as well as charges that have fallen short of conviction, in determining sentencing. *United States v. Morgan*, 595 F.2d 1134, 1136–37 (9th Cir. 1979); *Commonwealth v. Franks*, 372 Mass. 866, 867, 362 N.E.2d 895, 896 (1977); *State v. Burton*, 52 Ohio St. 2d 21, 23, 368 N.E.2d 297, 298 (1977). However, we think an entirely different circumstance exists where a defendant has been fully acquitted of such charges by a jury of twelve.

Black's Law Dictionary 23 (1979) defines "acquittal" as "[t]he legal and formal certification of the innocence of a person who has been charged with crime . . . ." It has been held to mean to "set free or judicially discharged from an accusation; released from . . . a charge or *suspicion* of guilt." *People v. Lyman*, 65 N.Y.S. 1062, 1065, 53 A.D. 470, 473 (1900) (quoting 1 AM. & ENG. ENC. LAW (2d ed.) p. 573) (emphasis added). The concept is intertwined with the notion, so central to our system of justice, that until guilt is proven beyond a reasonable doubt, a defendant is innocent:

> "[The presumption of innocence] is an instrument of proof created by the law in favor of one accused, whereby *his innocence is established* until sufficient evidence is introduced to overcome the proof which the law has created. This presumption on the one hand, supplemented by any other evidence he may adduce, and the evidence against him on the other, constitute the elements from which the *legal conclusion of his guilt or innocence is to be drawn.*"

*Coffin v. United States*, 156 U.S. 432, 459 (1895) (emphasis added).

It is true that a jury, in the private sanctity of its own deliberations, may acquit in a given case simply because the evidence falls just short of that required for conviction beyond a reasonable doubt. Nevertheless, we do not invade the inner sanctum of the jury to determine what percentage of probability they may have assigned to the various proofs before it. Indeed, in one case a jury might assign no weight whatever to the State's proof, while in another it may find the State's proof more probably true than not, but of course still insufficient for a criminal conviction. The inescapable point is that our law requires proof beyond a reasonable doubt in criminal cases as the standard of proof commensurate with the presumption of innocence; a presumption not to be forgotten after the acquitting jury has left, and sentencing has begun. " '[T]he presumption in favor of innocence is not to be reargued by mere suspicion. . . . It is a

maxim which ought to be inscribed in indelible characters in the heart of every judge and juryman. . . . [T]here must be legal evidence of guilt, carrying home a decree of conviction short only of absolute certainty.' " *Coffin, supra* at 456 (quoting *McKinley's Case,* 33 St. Tr. 275, 506 (1817)).

We think that the logical and legal inconsistencies associated with considering acquittals in enhancing sentencing are readily apparent. For example, a misdemeanant prosecuted in a jurisdiction having a recidivist statute, providing for enhanced sentences for multiple offenders, certainly could not be subject to an increased sentence under the statute based upon prior "offenses" of which he was fully acquitted.

■■■ It is well settled that a sentencing court cannot consider prior convictions which have been found constitutionally infirm. *United States v. Tucker,* 404 U.S. 443 (1972) (denial of right to counsel). We think that the presumption of innocence is as much ensconced in our due process as the right to counsel, and that a criminal defendant in Mr. Cote's position is entitled to its full benefit. This benefit is denied when a sentencing court may have used charges that have resulted in acquittals to punish the defendant.

We think it disingenuous at best to uphold the presumption of innocence until proven guilty, a principle that is "axiomatic and elementary, and [whose] enforcement lies at the foundation of the administration of our criminal law," *Coffin v. United States,* 156 U.S. at 453, while at the same time punishing a defendant based upon charges in which that presumption has not been overcome. The presumption is not a presumption of "not guilty" or guilty only by a preponderance. It is a presumption of *innocence,* and innocence means "*absence* of guilt." BLACK'S LAW DICTIONARY 708 (emphasis added).

Nor do we think that a criminal defendant can rightly be punished because in a given case the jury may have been convinced as to most elements of the offense, and yet remained unconvinced as to one or more other elements. The legislature has carefully delineated all of the essential prerequisites to a finding that a given individual must answer to society for his conduct, and courts should not be free to punish defendants for behavior which in one or more respects falls outside the boundaries of criminality.

At least one other State has adopted the view we espouse here. *See In re Lewallen,* 152 Cal. Rptr. 528, 533, 590 P.2d 383, 388 n.3 (1979); and the United States Supreme Court has commented with disfavor upon the practice of considering acquittals in sentencing. In *Townsend v. Burke,* 334 U.S. 736, 740 (1948), the petitioner had pled

guilty to two charges of armed robbery and two charges of burglary and not guilty to other charges. At his sentencing hearing, the trial court recited a long list of prior charges, including two charges of which the defendant had been acquitted. *Id.* at 739–40. In reversing the petitioner's ten-to-twenty-year sentence, the Court noted:

> "[I]t savors of foul play or of carelessness when we find from the record that, on two . . . of the charges [recited at the sentencing hearing] . . . the defendant had . . . been found not guilty. . . . We are not at liberty to assume that items given such emphasis by the sentencing court did not influence the sentence. . . ."

*Id.* at 740.

■■■ We hold that under the specific circumstances of this case, where the defendant has been acquitted of five of eight charges, and convicted of three others occurring at one date and time, the sentencing judge abused his discretion in stating that these were not "isolated incidents" and in thereby giving the impression that, in fashioning the sentence, he may have considered evidence of charges of which the defendant had been acquitted.

We make no comment on the length of these sentences, *per se.* All we hold is that upon remand the judge's discretion to impose sentence may not extend to consideration of evidence presented regarding the five charges of which the defendant was fully acquitted by a jury of twelve.

*Conviction affirmed;*
*sentence vacated;*
*remanded.*

THAYER, J., did not sit; the others concurred.