Belknap
No. 93-243

THE STATE OF NEW HAMPSHIRE

v.

GEORGE NAUGHTON

October 26, 1994

*Jeffrey R. Howard,* attorney general (*Jennifer J. Patterson,* attorney, on the brief and orally), for the State.

*Tardif, Shapiro & Cassidy,* of Concord (*R. Peter Shapiro* on the brief and orally), for the defendant.

BATCHELDER, J.    The defendant, George Naughton, was convicted, after a jury trial in Superior Court (*Fauver,* J.) of three misdemeanor violations of RSA 149-M:10, I-a (1990) for his participation in transportation and disposal of solid waste without a permit. On appeal he argues: (1) two of the three informations charged the same offense, requiring dismissal of one; (2) the informations should have been dismissed because the relevant statutory provisions are vague; (3) a prior decision of this court should have been admitted to rebut the State's introduction of prior bad acts evidence; and (4) his sentences should be vacated due to the inclusion of improper material in the presentence report. We affirm.

In June 1992, Lenard Birke was renovating an old house and barn on his property in Tilton. Although he originally contracted with another company for removal and disposal of the demolition debris, he switched to a disposal site owned by Ronald Martin when Martin, who was working on the renovation project, told Birke that he could give him a better price. Martin's salvage yard,

located in Alton, did not have a permit, as required by RSA chapter 149-M, for the disposal or processing of solid waste.

The defendant operates R & R Leasing, owned by his wife. R & R Leasing leases and transports dumpster-like containers called "roll-off boxes." The boxes are transported on a special "roll-off" truck owned by R & R Leasing. George Rowell was employed by R & R Leasing to deliver empty roll-off boxes to rental sites, pick them up when full, and deposit the contents at disposal sites. The defendant told Rowell to take one of the boxes to Ronald Martin's garage and to get instructions from Martin as to his delivery site in Tilton. The destination was Lenard Birke's renovation property, and Rowell delivered an empty box there. Later, the defendant told Rowell that the box was full and instructed him to pick it up and take it to Martin's salvage yard. He also instructed him on how to gain access to the yard in order to dump the load. Rowell did as instructed, dumped the contents of the roll-off box on the ground, and returned with the empty box to the defendant's property in Bradford. The load contained items such as wood, paper, shingles and metal; Rowell apprised the defendant of the contents.

Several weeks later the defendant told Rowell that the roll-off box at the Birke renovation site was again full and instructed him to return to the site, remove the box, and dump it at Martin's yard. Rowell went to the site and retrieved the box, which was filled with material consistent with the first load, and drove to Martin's yard. He was unable to enter the yard to dump the load, however, because a backhoe obstructed the entrance. He then drove the roll-off truck to the defendant's home, because it was closer than Bradford, and left the full roll-off box on the defendant's property. Rowell told the defendant of his inability to dump the load, and the defendant replied that he would have Martin leave the key in the backhoe and that Rowell should return to dump the load at Martin's yard. Rowell did return to Martin's yard with the load, but he was unable to find the backhoe key. An Alton police officer arrived and noticed wood protruding from under the tarp covering the load on the truck. On further examination of the load, the officer observed trash, fixtures, wood, tile, and other demolition debris. Officials from the waste management division of the State Department of Environmental Services (DES) were contacted and examined the contents on the truck and the load Rowell had previously dumped. They determined that the material consisted of construction and demolition debris, defined as solid waste under RSA 149-M:1, XVII-a and XIX (1990 & Supp. 1993). Disposal of solid waste, pursuant to RSA 149-M:1, V, includes the placement of solid waste onto the ground. Previously, the waste management

division had issued an administrative order against the defendant, charging him with disposal of demolition debris at an unpermitted facility in Bradford and ordering him to cease and desist. When he failed to comply, a civil enforcement action was brought against him. In 1989, the Merrimack County Superior Court issued an order permanently enjoining the defendant from operating the solid waste facility in Bradford.

The two loads from the Birke property spawned three misdemeanor informations against the defendant. The first information, concerning the first load, charged the defendant as an accomplice to unpermitted disposal of solid waste. The second information, concerning the second load, charged the defendant as an accomplice to unpermitted transport of solid waste in that he "solicited George Rowell to transport solid waste" to Martin's yard. The third information, also concerning the second load, charged the defendant as an accomplice to attempting to dispose of solid waste in that he "solicited George Rowell to transport and dispose of solid waste" at Martin's yard.

■ We turn first to the defendant's argument that the second information should have been dismissed as it charged the same offense as that comprising the third information. Although on appeal he argues that this violates his protections against double jeopardy, he made no constitutional challenge in the trial court. Rather, his argument below was that the transportation and attempted disposal of the second load was one continuous transaction involving one load of waste, constituting one offense. Because his double jeopardy claim was not raised below, we do not consider it, *see State v. Smart,* 136 N.H. 639, 661, 622 A.2d 1197, 1212, *cert. denied,* 114 S. Ct. 309 (1993), but address the issue as raising a common law claim of merger. *See* 21 AM. JUR. 2D *Criminal Law* § 21 (1981).

■ Although the same load of debris was the subject of both informations, the focus of the solid waste management statute is not upon units of waste. Rather, the statute makes unlawful specified *activity* with respect to that waste; namely, "to transport [it] to, or to dispose of [it] at, any facility other than an approved facility." RSA 149-M:10, I-a (Supp. 1993). The legislature thus plainly intended that a single transaction could give rise to multiple, distinct offenses, *cf. State v. Paris,* 137 N.H. 322, 335, 627 A.2d 582, 590 (1993), and the evidence here supported guilty verdicts on both. *See* 21 AM. JUR. 2D *Criminal Law* § 21 (doctrine of merger of offenses applies only where identical criminal act constitutes both offenses, not where offenses are separate and

distinct). The trial court did not err in denying the motion to dismiss the second information.

■ Next the defendant argues that all three informations should have been dismissed because the material transported, while unpermitted "solid waste" under RSA 149-M:1, was also permitted "junk" under RSA 236:91, II (1993), and that the statutes read together are vague. He argues that the purported similarity between "junk" and "solid waste" was "perplexing" to him when dealing with the Birke demolition debris. Although the defendant moved to dismiss below, he did so on the ground of insufficient evidence, not on the ground of vagueness that he asserts in this court. The argument is therefore not properly before us. *See State v. Demond,* 136 N.H. 233, 234, 614 A.2d 1342, 1343 (1992). To the extent that the argument he presents here embraces a sufficiency claim, it too fails: The evidence showed that what was hauled away from the Birke renovation site to Martin's yard was demolition debris, defined by statute to be solid waste, and that the defendant, having previously been cited civilly by the State Bureau of Solid Waste Management for disposal of demolition debris, knew it was solid waste.

■ The defendant challenges the trial court's refusal to allow him to introduce evidence of a 1978 decision of this court, *New Hampshire Public Utilities Commission v. Naughton,* 118 N.H. 750, 394 A.2d 311 (1978), and underlying materials that, according to the defendant, show that we had previously held to be lawful certain of his acts that were consistent with those charged in the instant informations. According to the defendant, this evidence was critical to rebutting the State's evidence of the 1983 administrative order and the 1989 court order finding him in violation of RSA chapter 149-M for operating an unpermitted solid waste facility. The trial court found the defendant's proffered evidence to be irrelevant because it concerned a different statute and that, even if relevant, its probative value was outweighed by possible confusion of the jury.

■ A trial court's decision not to admit evidence on the ground that it is irrelevant will not be set aside absent an abuse of discretion. *See State v. Smith,* 135 N.H. 524, 525, 607 A.2d 611, 612 (1992). The earlier *Naughton* case involved the provisions of RSA chapter 375-B (1977) and whether the defendant's operation as a trash collector brought him within the purview of that statute as a common or contract carrier. That statute and our decision in *Naughton* had nothing to do with the provisions of RSA chapter 149-M or the activities alleged in this case. Moreover, as the trial

court suggested, the defendant's state of mind in 1978 with respect to the lawfulness of his activity is of questionable probative worth in rebutting evidence that he was on notice in 1983 and again in 1989 of the unlawfulness of that activity. There was no abuse of discretion in excluding the evidence.

■ Finally, the defendant contends that his sentences should be set aside because of the inclusion in the presentence report of a six-page letter solicited by the probation department from the prosecuting attorney, which recommended to the probation department that the maximum sentence be recommended to the judge due to the years of noncompliance by the defendant. While not contesting any of the factual allegations contained in the letter, the defendant complains that the letter was "severely prejudicial" and "poisoned the mind[s]" of both the probation officer preparing the presentence report and the sentencing court.

Sentencing courts have "wide discretion in choosing the sources and types of evidence on which to rely in imposing sentence." *State v. Tufts,* 136 N.H. 517, 519, 618 A.2d 818, 819 (1992) (quotation omitted). Our review in this area concerns "the quality and veracity of the information used in the process of judging [what sentence is to be imposed] and the ability of the defendant to have a meaningful opportunity to point to its deficiencies." *Id.* at 520, 618 A.2d at 820.

Underlying the defendant's argument is the claim that a presentence report ought to be an impartial document. This is not the law. *See State v. Cote,* 129 N.H. 358, 371–72, 530 A.2d 775, 782–83 (1987). The defendant does not dispute the accuracy of the contents of the prosecutor's letter but complains that he had no opportunity to rebut the letter prior to the probation department's preparation of the presentence report. A defendant is not entitled to review the material forming the basis of a presentence report. *See Tufts,* 136 N.H. at 521, 618 A.2d at 820–21; *Cote,* 129 N.H. at 372, 530 A.2d at 783. The defendant in fact had the opportunity to review the prosecutor's letter prior to the sentencing hearing. We conclude that the trial court did not abuse its discretion in considering the prosecutor's submission to the probation department.

*Affirmed.*

THAYER, J., did not sit; the others concurred.