Hillsborough-northern judicial district
No. 2008-399

THE STATE OF NEW HAMPSHIRE

v.

DAMIEN K. YOUNG

Argued: September 10, 2009
Opinion Issued: October 30, 2009

334

*Kelly A. Ayotte*, attorney general (*Susan P. McGinnis*, senior assistant attorney general, on the brief and orally), for the State.

*Sisti Law Offices*, of Chichester (*Mark L. Sisti* on the brief and orally), for the defendant.

BRODERICK, C.J. The defendant, Damien K. Young, appeals his convictions for one count of attempted murder, RSA 630:1-a (2007); RSA 629:1 (2007), two counts of first degree assault, RSA 631:1, I(b) (2007), and one

count of felon in possession of a firearm, RSA 159:3 (2002). He also appeals his sentences on two of the convictions. He argues that the Superior Court (*Barry*, J.) erred by: (1) denying his motion to sever the felon in possession charge; (2) denying his motion to dismiss the charges and for a directed verdict based upon insufficient evidence; and (3) imposing consecutive sentences for the attempted murder conviction and assault conviction regarding the same victim. We affirm the convictions, vacate the consecutive sentences for first degree assault and attempted murder on the same victim, and remand.

I

The jury could have found the following facts. In the early morning hours of March 11, 2006, the defendant, along with another man, Ian Maranda, approached a car parked at a local restaurant in Manchester and fired multiple gunshots into the car. Two of the three men inside the car, Nathaniel Addo-Gyang and Anthony White, were seriously injured, but survived. The defendant held a grudge against Addo-Gyang because he believed that the victim had stabbed him years earlier. At some point during the evening before the shooting, the defendant had encountered Addo-Gyang at a local establishment and later arranged for his friends to follow Addo-Gyang in their car so they could report his location to the defendant and Maranda. Once the car in which Addo-Gyang was a rear-seat passenger parked at the restaurant, the defendant and Maranda parked nearby, approached the parked car, and began shooting into the rear and side of the vehicle. When they finished, the defendant threw his gun under a nearby vehicle but then retrieved it, after which both men fled.

The defendant was indicted on two counts of attempted murder, two counts of first degree assault, and one count of being a felon in possession of a firearm. After a consolidated trial, the jury acquitted the defendant on one count of attempted murder but convicted him on the remaining charges. This appeal followed.

II

The defendant first argues that the trial court erred by denying his motion to sever the felon in possession of a firearm count from the other charges. He contends that he suffered undue prejudice because the jury was exposed to highly prejudicial evidence of his prior felony convictions that otherwise could not have been introduced into evidence in a separate trial for assault and attempted murder.

"We will uphold the trial court's decision not to sever cases unless we conclude that the decision constitutes an unsustainable exercise of discre-

tion." *State v. Ramos*, 149 N.H. 118, 120 (2003). Accordingly, "[a] defendant must demonstrate that [an adverse severance] ruling was clearly untenable or unreasonable to the prejudice of his case." *Id.* (quotation omitted).

Certain procedural facts provide a necessary backdrop to the trial court's denial of the defendant's motion to sever. The record demonstrates that the defendant had agreed at a pretrial conference to stipulate to his convicted felon status, an element of the firearm charge, *see* RSA 159:3. On the morning of the first day of trial, a disagreement arose about the nature of the intended stipulation. Specifically, the defendant requested that the trial court not read it to the jury so that they would not learn of his status as a convicted felon. He argued that his felon status would prejudice the jury's ability to reach a fair verdict on the assault and attempted murder charges. Rather, he wanted the scope of the firearm charge before the jury to be limited solely to whether he knowingly possessed a firearm.

Both the State and the trial court raised concerns about the defendant's request to withhold the stipulation from the jury. After further colloquy, during which the trial court offered several options to the defendant, the defendant ultimately withdrew his stipulation and sought to sever the firearm charge. The trial court denied the motion to sever, and the consolidated trial proceeded.

The State argues that the trial court's decision to deny the defendant's motion to sever should be affirmed because his motion was untimely under Superior Court Rule 98-F. We agree.

Motions to sever must be filed "not less than forty-five (45) calendar days prior to the scheduled jury selection date or within such other time in advance of trial as the Court may order for good cause shown or may provide for in a pretrial scheduling order." SUPER. CT. R. 98-F. The defendant sought to sever the firearm charge on the morning of trial without offering any good cause whatsoever for his noncompliance with Rule 98-F. The colloquy in the transcript indicates that sometime before trial, the defendant had agreed to stipulate to his felon status. The defendant makes no argument, however, that the parties and the court also had agreed before trial to the procedure of accepting his stipulation without reading it to the jury. On the morning of trial, the trial court refused the defendant's suggested procedure, and he offered no justification for his noncompliance with the forty-five day time limit of Rule 98-F. Indeed, when the State raised Rule 98-F on appeal in its responsive brief, the defendant offered no counter argument by way of a reply brief or during oral argument to justify or excuse his noncompliance. Accordingly, we cannot say that the trial court committed an unsustainable exercise of discretion in denying the defendant's motion to sever, sought for the first time on the

morning of trial. Any resulting prejudice to the defendant was directly attributable to his unexplained delay in seeking severance in a timely manner.

■ To the extent the defendant argues that the trial court was obligated to accept his stipulation without reading it to the jury, we reject his argument. The defendant contends that in *State v. Cardin*, 129 N.H. 137 (1987), we "allowed the defendant in a driving while intoxicated (subsequent) prosecution to stipulate to his prior record without putting evidence of the prior record before the jury." *Cardin*, however, is readily distinguishable because that defendant's stipulation to the prior DWI conviction was relevant only to enhanced sentencing and was not part of the essential elements of the crime charged. *Cardin*, 129 N.H. at 139. We reasoned, "since the prior conviction is relevant only to sentencing, and the defendant has stipulated to its validity, the jury has no need to know of it." *Id.*

By contrast, the defendant's status as a convicted felon is what rendered his gun possession illegal. Thus, unlike in *Cardin*, the defendant's stipulation in this case pertained to an essential element of the firearm charge. Indeed, the defendant admitted before the trial court that reading a stipulation of an essential element of a crime to the jury is normal procedure. Yet, on the morning of trial, he requested a novel procedure and, on appeal, he cites no cases demonstrating that the trial court was required to or ought to have accepted it. Because he did not develop his argument beyond citing *Cardin*, we need not address it any further. *See In re Kotey M.*, 158 N.H. 358, 361 (2009) (court declined to review undeveloped argument).

## III

The defendant next argues that the State failed to present sufficient evidence to support each of his convictions. More specifically, he argues that the evidence was insufficient to prove beyond a reasonable doubt that he was one of the shooters, that he possessed a firearm on the evening of the shooting, or that he inflicted injury on either victim. The State contends, however, that the defendant preserved a sufficiency challenge only to his first degree assault convictions based upon his assertion that the evidence failed to demonstrate that any bullets he fired actually injured the victims. The State also contends that the evidence was sufficient for the jury to convict the defendant on each charge as either a principal or an accomplice, as the indictments alleged.

We assume without deciding that the defendant preserved his sufficiency challenges in the trial court. We, however, agree with the State that under either principal or accomplice liability, sufficient evidence was presented for a rational juror to conclude beyond a reasonable doubt that the defendant

committed the crimes of attempted murder on Addo-Gyang, first degree assault on both Addo-Gyang and White, and felon in possession of a firearm.

Our standard for review in this area is well established:

> To prevail in a challenge to the sufficiency of the evidence, the defendant bears the burden of proving that no rational trier of fact, viewing the evidence in the light most favorable to the State, could have found guilt beyond a reasonable doubt. In reviewing the evidence, we examine each evidentiary item in the context of all the evidence, not in isolation. Circumstantial evidence may be sufficient to support a finding of guilty beyond a reasonable doubt. Further, the trier may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided they can be reasonably drawn therefrom.

*State v. Crie*, 154 N.H. 403, 406 (2006) (citations omitted).

■ ■ To prove attempted murder, the State is required to submit sufficient evidence that a person took a substantial step toward killing another with the purpose of accomplishing the killing. RSA 630:1-a; RSA 629:1. The attempted murder indictment here alleged that the defendant acted in concert with Maranda, and with the purpose of causing the death of Addo-Gyang, when he pointed and discharged a firearm into the vehicle Addo-Gyang occupied under circumstances the defendant believed constituted a substantial step towards killing Addo-Gyang. Thus, the defendant was charged as both a principal and an accomplice. *See State v. Munson*, 146 N.H 712, 716 (2001). To prove accomplice liability, the State was required to submit sufficient evidence that: "(1) the accomplice had the purpose to make the crime succeed; (2) the accomplice's acts solicited, aided or attempted to aid another in committing the offense; and (3) . . . the accomplice shared the requisite mental state for the offense." *State v. Duran*, 158 N.H. 146, 151 (2008).

Viewing the evidence in the light most favorable to the State, we conclude that it was sufficient for a rational juror to find beyond a reasonable doubt that the defendant committed the crime of attempted murder against Addo-Gyang, either as a principal or as an accomplice. Numerous witnesses, including the two victims, testified about the history between the defendant and Addo-Gyang and the events surrounding the shooting. The defendant held a long-time grudge against Addo-Gyang because the defendant believed that Addo-Gyang had stabbed him in a fight years earlier. On the evening of the shooting, the two saw one another at a local establishment and had a brief hostile exchange, where the defendant made

a threatening gesture toward Addo-Gyang. Addo-Gyang left with his friends, including White, the other victim. The defendant and Maranda also drove away with a friend.

The defendant and Maranda used a cell phone to call a group of female friends traveling in a different car. They instructed the women to follow Addo-Gyang and inform them of his location. The women did so and kept in constant telephone contact with the two men. En route, the women pulled up behind the victims' car at a gas station, where one woman got out and confirmed that Addo-Gyang was a rear-seat passenger, then returned to her car. Ultimately, the women followed the victims to a local restaurant where they both parked. The defendant and Maranda instructed their driver to drop them off in a nearby alley, and she complied. The men alit from the car with guns at their sides, and Maranda told the friend to leave immediately. The two men walked over to the parked car occupied by Addo-Gyang, White and another man, then fired multiple gunshots, aiming toward the back and side of the vehicle. Both Addo-Gyang and White were struck, and Addo-Gyang suffered approximately nine gunshot wounds. The defendant threw his gun under a nearby car, retrieved it, and then fled.

 The defendant advances numerous challenges to certain aspects of the evidence. In particular, he argues that "the State's witnesses simply couldn't put a firearm in [his] hand, couldn't identify the number of shooters, couldn't identify the number of guns used, and couldn't identify [his] location during the shooting." To support these attacks on the evidence, he points to inconsistencies in the testimony of certain witnesses between their direct and cross-examinations, and among various witnesses' direct testimony. In the end, however, a "[c]ommon sense evaluation of the credibility of witnesses . . . is [within] the province and obligation of the jury." *State v. Huard*, 138 N.H. 256, 259 (1994). Witness testimony supports all the facts outlined above, including that the defendant and Maranda possessed guns that evening, tracked the car occupied by Addo-Gyang, took aim at multiple targets on the car where people would be expected to be located, and together discharged numerous gunshots with the intention of killing Addo-Gyang. Even if the evidence failed to establish that any bullet fired by the defendant actually struck Addo-Gyang, a rational juror could have convicted him of attempted murder under the facts outlined above as either a principal or an accomplice because actual injury is not an element of the crime.

 We turn to the first degree assault indictments involving the two victims, Addo-Gyang and White, both of whom occupied the targeted vehicle. To prove first degree assault under RSA 631:1, I(b), the State is required to submit sufficient evidence that a defendant purposely or

knowingly caused bodily injury to another by means of a deadly weapon, *see* RSA 625:11, V (2007) (defining deadly weapon). The assault indictments alleged that the defendant, acting in concert with the other shooter, knowingly caused bodily injury to each victim by discharging a firearm at the vehicle they occupied and causing numerous gunshot wounds. The assault indictments, therefore, also charged the defendant as both a principal and an accomplice. Thus, while proof that each victim incurred bodily injury was necessary to secure the first degree assault convictions, evidence supporting each element of accomplice liability also would be sufficient to support the convictions against the defendant.

■ Viewing the evidence in the light most favorable to the State, we conclude that it was sufficient for a rational juror to conclude beyond a reasonable doubt that: (1) the defendant had the purpose to inflict bodily injury on each victim; (2) he committed acts that aided the commission of the assaults; and (3) he committed these acts knowing that the victims would incur bodily injury. *See Duran*, 158 N.H. at 151 (outlining elements of accomplice liability). Even if none of the defendant's bullets actually hit either victim, the evidence was sufficient to establish beyond a reasonable doubt that his purposeful acts were intended to, and actually did, aid the other shooter in accomplishing the first degree assaults on each victim. *Cf. State v. Merritt*, 143 N.H. 714, 718 (1999) (accomplice liability requires proof that the defendant intended to, and actually did, aid the primary actor).

■ ■ We briefly turn to the firearm charge. To secure a conviction for felon in possession of a firearm, the State must prove that: (1) the defendant knowingly owned, possessed or controlled a firearm; and (2) he was previously convicted of a felony. RSA 159:3, I; *State v. Stratton*, 132 N.H. 451, 457 (1989). The indictment alleged that the defendant knowingly possessed a firearm after having been convicted of several felonies in Massachusetts in 2004. The State submitted evidence of his criminal history that identified the felony convictions. Moreover, despite the questions of credibility raised by the defendant, several witnesses testified that they actually saw the defendant holding a gun that evening, or saw him extend his arm like he was holding a gun and witnessed muzzle flashes coming from the location where a gun would be located in his hand. Therefore, viewing the evidence in the light most favorable to the State, a rational jury could have found beyond a reasonable doubt that the defendant, a convicted felon, unlawfully possessed a firearm that evening.

## IV

Finally, the defendant argues that the trial court erred by imposing consecutive sentences on the assault and attempted murder convictions regarding the same victim. He contends that the consecutive sentences violate both the common law doctrine of merger and the constitutional prohibition against double jeopardy. The State argues that imposition of consecutive sentences does not violate the doctrine of merger because each of the ten bullets fired into the car comprises a separate criminal act. Because we agree with the defendant's merger argument, we need not address the constitutional claim.

Our jurisprudence on the common law doctrine of merger is limited. *See State v. Higgins*, 149 N.H. 290, 302 (2003) (declining to address merger argument as either cursory in nature or wholly lacking in merit); *State v. Naughton*, 139 N.H. 73, 76 (1994) (information for unlawful transporting and information for attempting to unlawfully dispose of solid waste for same load of debris did not violate doctrine of merger); *Lord v. The State*, 18 N.H. 173, 178 (1846) (noting that lesser offense merges into greater offense when the greater offense has been committed). Other jurisdictions, however, have more fully explored and developed the doctrine of merger. *See, e.g., Ludy v. State*, 658 S.E.2d 745 (Ga. 2008); *People v. Williams*, 892 N.E.2d 620 (Ill. App. Ct. 2008); *Com. v. Anderson*, 650 A.2d 20 (Pa. 1994). In fact, some states have adopted legislation circumscribing the scope of merging criminal convictions. *See, e.g., State v. Cabrales*, 886 N.E.2d 181, 187 (Ohio 2008) (state statute regarding "allied offenses" essentially codified judicial merger); *State v. Gonzales-Gutierrez*, 171 P.3d 384, 391-92 (Or. Ct. App. 2007) (merger statute regarding multiple inchoate crimes designed for the commission of a single crime), *review denied*, 179 P.3d 672 (Or. 2008). The parties' limited briefing on merger, however, gives us no cause to move beyond our own extrapolation of the doctrine in *Naughton*, 139 N.H. at 76.

While a single transaction can give rise to multiple, distinct offenses, crimes will merge only where the identical criminal act constitutes both offenses. *See Naughton*, 139 N.H. at 76. We first must determine whether the crimes as charged are based upon identical criminal conduct or activity. *See id.* If so, we next examine the underlying criminal statutes to discern whether the legislature intended that the single transaction give rise to multiple, distinct offenses. *Id.* In particular, we examine whether the statutes specify different unlawful activity. *See id.*

■■■ ▬▬

 ■ The indictments at issue charged the defendant with the identical criminal activity; namely, intentionally discharging a firearm into the vehicle occupied by Addo-Gyang. In the first degree assault indictment, the State alleged that the defendant

> in concert with Ian Maranda, . . . knowingly caused bodily injury to Nathaniel Addo[-]Gyang *by means of a deadly weapon, a firearm, by discharging the firearm at the vehicle where he was seated,* thereby causing numerous gunshot wounds.

(Emphasis added.) In the attempted murder indictment, the State alleged that the defendant

> with the purpose to cause the death of Nathaniel Addo-Gyang, . . . in concert with Ian Maranda, *pointed and discharged a firearm, a deadly weapon, into a vehicle occupied by Nathaniel Addo-Gyang, said acts* under the circumstances as he believed them to be constituted a substantial step towards the commission of the crime.

(Emphasis added.) We acknowledge that the indictments allege different *mens reas* and consequences of intentional conduct. Specifically, the assault charge alleges that the defendant knowingly caused bodily injury (multiple gunshot wounds), whereas the attempted murder charge alleges that he had the purpose to cause the death of Addo-Gyang when he took a substantial step toward the commission of the crime. Obviously, attempted murder, as an inchoate crime, does not require that bodily injury actually occur to support a conviction based upon the substantial step taken to achieve the killing. Merger, however, focuses upon whether the criminal charges are based upon the identical criminal act or transaction, not the result itself. Here, the indictments both charged the defendant with the identical unlawful act of intentionally discharging a firearm into a car occupied by Addo-Gyang.

 ■ We reject the State's argument that the indictments were based upon different criminal acts of violence. The State seeks to isolate each of the ten bullets that were collectively discharged by the shooters as separate criminal acts. According to the State, one of the bullets hit a victim other than Addo-Gyang and two lodged in a first aid kit. Thus, it argues, any single bullet could have satisfied the substantial step alleged in the attempted murder indictment, whereas the bullets that did not hit Addo-Gyang could not support the bodily injury element alleged in the assault indictment. This may be true, but, under *Naughton,* we look to how the State actually charged the defendant. *Id.* The State does not provide any

authority to justify varying from this approach. Accordingly, because both indictments alleged the defendant's discharge of the firearm as a single criminal transaction, we conclude that they were based upon identical criminal activity.

Next, we must determine whether the legislature intended for a single criminal act or transaction to give rise to distinct offenses of first degree assault and attempted murder. *See id.* In so doing, under the doctrine of merger we focus upon the particular unlawful activity that is proscribed by the statutes. *See id.* The statutory provision for first degree assault, under which the defendant was charged, proscribes a person from purposely or knowingly causing bodily injury to another by means of a deadly weapon, RSA 631:1, I(b). The statutory provision for attempted murder, under which the defendant was charged, proscribes a person from taking a substantial step toward causing another's death with the purpose of killing that person, RSA 630:1-a; RSA 629:1. Intentionally trying to kill a person and knowingly inflicting bodily injury on that same person do not constitute two distinct criminal activities when the identical criminal conduct is the basis of both charges. We conclude that the legislature did not intend for identical criminal conduct to give rise to distinct charges for first degree assault and attempted murder.

We emphasize that the State did not distinguish among the bullets fired by the defendant when charging him with assault and attempted murder. In other words, the indictments did not charge the defendant with first degree assault based upon the bullets that actually hit Addo-Gyang, while charging him with attempted murder based upon the bullets that were shot at Addo-Gyang but missed. Rather, the same shooting activity was the basis of both indictments. Further, the criminal activity of attempted murder identified in this case subsumes the criminal activity of seeking to cause bodily injury to that same person with the same conduct. Accordingly, under the circumstances of this case, we conclude that the trial court erred by imposing consecutive sentences for the first degree assault and attempted murder convictions regarding the same victim. We vacate the sentences and remand for further proceedings consistent with this opinion.

*Affirmed in part; vacated in part; remanded.*

DALIANIS, DUGGAN, HICKS and CONBOY, JJ., concurred.