NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

—————————————————

Carroll
No. 2012-323

THE STATE OF NEW HAMPSHIRE

v.

WILLIAM RAMSEY

Argued: November 7, 2013
Opinion Issued: January 28, 2014

Joseph A. Foster, attorney general (Nicholas Cort, assistant attorney general, on the brief and orally), for the State.

Thomas Barnard, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

DALIANIS, C.J. The defendant, William Ramsey, appeals his convictions of second degree assault, see RSA 631:2, I(c) (2007), reckless conduct with a deadly weapon, see RSA 631:3 (2007), kidnapping, see RSA 633:1, I(c) (2007), and criminal threatening, see RSA 631:4 (2007), following a jury trial in Superior Court (Houran, J.). He argues that the trial court erred by: (1) denying his request to cross-examine the victim about an allegedly false statement she made on her 2010 application to renew her driver's license; (2) allowing the State to introduce evidence that he treated the victim's dog well;

and (3) imposing consecutive sentences for second degree assault and reckless conduct with a deadly weapon. We affirm.

The jury could have found the following facts. The defendant and the victim began dating in June 2010. On December 13, 2010, they were at his apartment where he had cooked dinner for her. After they quarreled, the victim announced that she was "just going to go home." While she was in the bathroom changing, she heard the defendant say, "You're not F'ing going anywhere" and then punch a wall. He came into the bathroom and grabbed the victim by the throat. The victim lost consciousness. When she regained consciousness, she was in the bathtub, and the defendant was on top of her, strangling and beating her "really hard" with a curling iron, saying that he was going to kill her. The victim saw the curling iron "coming right at [her]" as the defendant then "shoved [it] inside of [her] throat," causing her to choke. She again lost consciousness, and when she regained it, she was in the kitchen, trying to scream for help, although she was only able to do so "very quietly." Eight days later, after the victim had explained that she no longer desired contact with the defendant because he frightened her, he sent her a text message that said: "Not talking was part of our problem. Should have finished what I started last week."

On appeal, the defendant first argues that the trial court violated New Hampshire Rules of Evidence 403 and 608(b) and the Confrontation Clauses of the State and Federal Constitutions, see N.H. CONST. pt. I, art. 15; U.S. CONST. amends. VI, XIV, by precluding him from cross-examining the victim about an allegedly false statement she made on a 2010 application to renew her driver's license. The State contends that any error was harmless. For the purposes of this appeal, we assume, without deciding, that the trial court erred, and we agree with the State that any error was harmless. See State v. Hernandez, 159 N.H. 394, 401-02 (2009) (applying harmless error review to admission of evidence in violation of State and Federal Confrontation Clauses).

"An error is harmless if we can say beyond a reasonable doubt that it did not affect the verdict." State v. Beede, 156 N.H. 102, 109 (2007). "The State bears the burden of proving that an error is harmless." Id. "The evaluation of whether the State has met its burden involves consideration of the alternative evidence presented at trial and the character of the contested evidence." Id. "An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity or weight, and if the contested evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt." Id.

The evidence of the defendant's guilt was compelling. The victim's co-worker testified that on the morning after the assault, the victim had "black eyes," bruises and cuts on her lips, red and bloody marks on her neck, and bruises on her arms. The co-worker also testified that the victim's "scalp

2

. . . was covered in red dots."  The co-worker testified that the victim "sounded like she had laryngitis" and that she was "very upset" and "crying."  The victim's supervisor testified that he could barely hear the victim when she spoke to him a few days after the assault and that he saw "bruising and red marks on her neck."  Several days later, the bruises were still visible, according to police testimony and photographic evidence.  The emergency room physician, who examined the victim approximately nine days after the assault, testified that he saw a "small laceration" on her neck and bruises on her arms.

The defendant admitted that, on the night in question, when the victim told him that she no longer wanted to continue their conversation, he grabbed her arms, used his hand to push her by her throat against the bathtub, and, slapped her "hard" several times "across her face" while holding her by the neck up against a wall.  The defendant testified that he grabbed the victim by the arms and held her in the bathroom because he wanted to talk with her.  The defendant confirmed that later that evening, he sent the victim a text message, asking what she planned to tell others about the bruising he had caused and asking her if she planned to call the police.  Another text message read:  "The only thing that Fs with me is that it took me doing what I did to get you to talk."  In another message, the defendant said:  "I should have f***ed you while you were here."  He admitted to sending the victim a text message eight days after the incident, which said:  "Not talking was part of our problem.  Should have finished what I started last week."

Moreover, the defendant impeached the victim's credibility.  See id.  He cross-examined her about lying to medical personnel about having used marijuana on the night in question.  He also cross-examined the victim vigorously about inconsistencies between her testimony and her account to the police.

Although we acknowledge that this case essentially presented a credibility contest between the defendant and the victim, in view of the overwhelming evidence of the defendant's guilt, we are convinced beyond a reasonable doubt that the additional impeachment value of his proposed inquiry into the victim's 2010 application to renew her driver's license would not have affected the verdict.  See State v. Goodale, 144 N.H. 224, 234 (1999).

The defendant next asserts that the trial court erred by allowing the State to introduce the following evidence that he treated the victim's dog well:

Q  Okay. And did the dog and the Defendant get along?

A  They did very much so.  I think [the defendant] loved her more than he loved me and would regularly buy her steaks and stuff.

3

. . . .

A  They had a very, very, very close relationship.  And he played with her all the time.  And like I said, would buy her full steaks and cook them up just for her.  And go to fast food restaurants just for her to buy her cheeseburgers.  And they were very close.  Probably closer than I was to her at that time.

Q  Okay.

A  I was a bit jealous.

The admissibility of evidence is a matter left to the sound discretion of the trial court.  State v. McDonald, 163 N.H. 115, 121 (2011).  We will not reverse the trial court's decision to admit evidence absent an unsustainable exercise of discretion.  Id.  "To demonstrate an unsustainable exercise of discretion, the defendant must show that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case."  State v. Munroe, 161 N.H. 618, 626 (2011).  Here, we uphold the trial court decision because the defendant has failed to demonstrate that the court's admission of the challenged evidence was "clearly untenable or unreasonable to the prejudice of his case."  Although the evidence may have been of questionable relevance, the defendant has not persuaded us that its admission prejudiced his case.

Finally, the defendant contends that the trial court violated the common law doctrine of merger when it imposed consecutive sentences for second degree assault and reckless conduct with a deadly weapon.  In so arguing, he relies primarily upon our decision in State v. Young, 159 N.H. 332 (2009).  In Young, the jury could have found that the defendant fired multiple gunshots into a parked car, seriously injuring the victim.  Young, 159 N.H. at 335.  Young was convicted of attempted murder and first degree assault.  See id.  Young argued on appeal that the trial court erred by imposing consecutive sentences, contending that the sentences violated both the common law doctrine of merger and the constitutional prohibition against double jeopardy.  Id. at 341.  We analyzed his claim only under the common law doctrine of merger.  Id.  In so doing, we observed that we had not fully developed the doctrine and that the parties' "limited briefing" gave us no cause to do so in that case.  Id.  Instead, we attempted to glean general principles from a prior case, State v. Naughton, 139 N.H. 73 (1994).  Ultimately, we decided that because the attempted murder and first degree assault indictments charged Young with the identical criminal activity – intentionally discharging a firearm into the vehicle occupied by the victim – and because the attempted murder charge "subsume[d]" the first degree assault charge based upon the same conduct, the two charges merged.  Young, 159 N.H. at 342-43.

4

In hindsight, we find our analysis in Young to be problematic. For instance, although we stated that the attempted murder charge "subsume[d]" the first degree assault charge based upon the same criminal activity, id. at 343, we also "acknowledge[d] that the indictments [for the two charges] allege[d] different mens reas and consequences of intentional conduct," id. at 342. Specifically, the first degree assault charge alleged that Young "knowingly caused bodily injury," while the attempted murder charge did not, and the attempted murder charge alleged that Young had the purpose to cause the victim's death, while the first degree assault charge did not. Id. Accordingly, in fact, the attempted murder charge did not "subsume[]" the first degree assault charge; once the attempted murder charge was proved, all of the elements of the first degree assault charge were not proved. See State v. Farr, 160 N.H. 803, 807-09 (2010) (possessing pornography charge was a lesser included offense of delivering pornography charge because proof that defendant delivered video clip necessarily constituted proof that he possessed or controlled the clip).

Although Young is of analytic concern, neither party asks us to overrule it, and we are disinclined to do so at this juncture. We are also disinclined to extend Young to this case. Therefore, we limit Young to its unique factual circumstances.

In the context of multiple sentences stemming from a single act, there should be "no difference between a double jeopardy analysis and a [common law] merger analysis; double jeopardy and merger are identical [in this context] and the operative consideration in both is whether the [two] . . . offenses are the same or different." Com. v. Anderson, 650 A.2d 20, 23 (Pa. 1994); see Note, The Interplay of Double Jeopardy, the Doctrine of Lesser Included Offenses, and the Substantive Crimes of Forcible Rape and Statutory Rape, 82 Temp. L. Rev. 1103, 1107 (2009) (observing that "[m]ost courts . . . have either abolished the [common law merger] doctrine as unnecessary or treat merger analysis as identical to the double jeopardy 'same offense' analysis"); Shellenberger & Strazzella, The Lesser Included Offense Doctrine and the Constitution: The Development of Due Process and Double Jeopardy Remedies, 79 Marq. L. Rev. 1, 132 n.455 (Fall 1995) ("Most jurisdictions now have discarded the 'common law merger doctrine' as repudiated or no longer necessary."). Accordingly, we apply double jeopardy principles to analyze whether the two offenses at issue were the "same" for purposes of the common law merger doctrine.

"Multiple punishment cases . . . come in two varieties." Tarrant v. Ponte, 751 F.2d 459, 461 n.3 (1st Cir. 1985). "First, there are the so-called 'double-description' cases, in which the issue is whether two statutes describe two separate offenses or are merely different descriptions of the same offense." Id. (quotation omitted). "Second, there are 'unit of prosecution' cases [in which] the problem is not that the same course of conduct is proscribed by more than

5

one statute but that a defendant's continuing course of conduct is fragmented into more than one violation of a single statutory provision." Id. In both "double description" and "unit of prosecution" cases, we examine whether proof of the elements of the crimes as charged will require a difference in evidence. Compare State v. Sanchez, 152 N.H. 625, 630-32 (2005) ("double description" case involving charges for first degree murder and conspiracy to commit murder), and State v. McKean, 147 N.H. 198, 200-01 (2001) ("double description" case involving kidnapping and criminal threatening charges), with State v. Krueger, 146 N.H. 541, 542-43 (2001) ("unit of prosecution" case involving multiple indictments for aggravated felonious sexual assault of the same victim during the same twenty-five minute encounter), and State v. Stratton, 132 N.H. 451, 454-55 (1989) ("unit of prosecution" case involving multiple indictments for being a convicted felon in possession of a firearm).

Here, proof of the elements of the two charges, one for second degree assault and the other for reckless conduct with a deadly weapon, required different evidence. The second degree assault indictment alleged that the defendant "recklessly caused bodily injury" to the victim "under circumstances manifesting an extreme indifference to the value of human life by ramming a curling iron into [her] throat impairing her ability to speak in her normal voice for a prolonged period of time." The reckless conduct with a deadly weapon indictment alleged that the defendant "recklessly placed or may have placed [the victim] in danger of serious bodily injury in that he rammed a curling iron into her throat, and the curling iron was a deadly weapon in the manner used or threatened to be used pursuant to RSA 625:11, V."

As charged, each indictment required the State to prove a fact not necessary to the other. The second degree assault indictment required the State to prove that the defendant "recklessly caused bodily injury," to wit, impairing the victim's ability to speak in her normal voice for a prolonged period of time. The reckless conduct with a deadly weapon charge did not require proof of actual bodily injury. Similarly, the reckless conduct with a deadly weapon charge required proof that the defendant placed the victim in danger of "serious" bodily injury and that the curling iron "was a deadly weapon" in the way he used or threatened to use it, while the second degree assault indictment did not. Thus, because the evidence required to prove each indictment is different, even though based upon the same conduct, the two charges did not merge. See McKean, 147 N.H. at 200-01.

Affirmed.

HICKS, CONBOY, LYNN and BASSETT, JJ., concurred.