# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2013-0886, <u>State of New Hampshire v. Joshua Fowler</u>, the court on January 9, 2015, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Joshua Fowler, appeals his conviction, following a jury trial in Superior Court (<u>Delker</u>, J.), on seven charges of residential burglary. <u>See</u> RSA 635:1 (2007) (amended 2014). Each indictment alleged that the defendant, acting either alone or in concert with one or more persons, <u>see</u> RSA 626:8 (2007), burglarized a different residence from the residences identified in the other indictments. On appeal, the defendant argues that the trial court erred by not suppressing certain statements he made to detectives after he had invoked his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966). The State does not contest that the detectives interrogated the defendant while he was in custody after he had invoked his <u>Miranda</u> rights, but instead argues that the trial court sustainably found that the motion to suppress was untimely, and that any error in denying the motion was harmless beyond a reasonable doubt.

We first address whether the trial court erred by ruling that the motion to suppress was untimely. Superior Court Rule 98F required the defendant to file any motion to suppress "not less than forty-five (45) calendar days prior to the scheduled jury selection date or within such other time in advance of trial as the Court may [have] order[ed] for good cause shown or may have provide[d] for in a pretrial scheduling order." <u>Super. Ct. R.</u> 98F (2007) (amended 2014 and re-codified as <u>Super. Ct. Crim. R.</u> 98G). Although trial courts have discretion to act upon untimely motions to suppress, "defendants are not entitled to assume that a judge will exercise discretion to entertain such a motion at the eleventh hour." <u>State v. Knight</u>, 161 N.H. 338, 341 (2011) (quotation omitted). Trial courts "have a legitimate interest in the enforcement of scheduling deadlines, both to manage a pending case and to retain the credibility of these deadlines in future cases." <u>Id</u>. (quotation omitted).

We review the trial court's decision to deny a motion to suppress on timeliness grounds for an unsustainable exercise of discretion. <u>Id</u>. To establish that the trial court unsustainably exercised its discretion, the defendant must show that the decision was clearly unreasonable or untenable to the prejudice of his case. <u>See</u> <u>State v. Young</u>, 159 N.H. 332, 336 (2009).

In this case, the defendant did not request that the trial court suppress any of his statements until the second day of trial, well after any deadline under Rule 98F had passed.  The record establishes that he was first detained in connection with the case at a pawn shop in Lawrence, Massachusetts, and that he was questioned shortly thereafter, after he had waived his Miranda rights, by Lawrence Detective Kevin Nigohosian and Hampstead Detective Robert Kelley.  The interview was recorded.  The recording reflects that at one point, after Detective Kelley had asked the defendant about a laptop computer that was in his possession at the pawn shop, the defendant stated that he was going to "stop answering questions," and that if Detective Kelley could not answer his question regarding whether there was something wrong with the computer, he was not going to answer Detective Kelley's questions.  The defendant further stated that he had called a lawyer who would arrive shortly, that he was "probably better off waiting for" the lawyer to arrive, and that he wanted to "hold off" until the lawyer arrived.  Detective Kelley responded, "You don't have to talk to me anymore.  I don't know if you want to speak to the Lawrence detective."  Detective Nigohosian added, "If you want to wait for your attorney, that's fine.  I have different questions, but if you're going to wait, that's fine with me."  At that point, the defendant stated that if Detective Nigohosian would be "straightforward," he would answer his questions.

Detective Nigohosian advised the defendant that he was now under arrest for receiving stolen property, but that his "bigger problems [were] in New Hampshire."  After Detective Nigohosian had asked the defendant whether he owned other items that were in his car at the pawn shop, the defendant asked if he could speak with Detective Nigohosian alone.  After Detective Kelley had left the room, and after Detective Nigohosian, at the defendant's request, turned the recorder off, the defendant stated that he "was working with a kid in Hampstead."  Detective Nigohosian further testified that the defendant asked him "what he was looking at for sentencing or time in reference to the crimes."

The prosecutor was not aware that the interview had been recorded until the first day of trial.  When the prosecutor learned that the interview had been recorded, he acquired a copy of the recording, and produced it to counsel for the defendant.  Counsel for the defendant was unable, however, to review the recording.  Although the State had not produced the recording prior to trial, it had produced Detective Kelley's police report, in which he had stated:

> Detective Nigohosian and I attempted to conduct an interview with [the defendant].  [The defendant] was read his Miranda rights which he waived and agreed to speak with both detectives.  I began to talk to [the defendant] about the laptop that

2

was in the front seat of his car. [The defendant] advised that he had it for about a month, that he bought it off a buddy for 600 or $700.

[The defendant] was unable to tell me who the buddy was. [The defendant] then asked me if there was a problem with the laptop. When I did not answer the question the way [the defendant] wanted, he replied by telling me that he wanted to wait for his lawyer.

[The defendant] then stated that he was willing to talk to Detective Nigohosian, but did not want me in the room, so I left.

In addition, the State produced an affidavit from Detective Kelley stating:

When Detective Nigohosian of [the] Lawrence Police Department and I attempted to interview [the defendant], he lied and stated that the Pro Mac laptop was his and when [the defendant] was confronted about his lie, he immediately stated he did not want to talk to me.

[The defendant] did agree to continue speaking with Detective Nigohosian for a short period of time. [The defendant] advised to Detective Nigohosian that he was "working with another kid from Hampstead." He did not say who.

Detective Nigohosian attempted to question [the defendant] more and he requested his lawyer.

On the second day of trial, after the trial court and parties had reviewed the recording outside the presence of the jury, the defendant argued that it revealed much more than that which the discovery had disclosed, and established that the detectives had violated his Miranda rights by continuing to question him after he had asserted his rights to silence and to counsel. He further asserted that he was unfairly surprised by the late disclosure of the recording. The trial court rejected these arguments, finding that "there was plenty of information in the discovery to have flagged an issue for suppression . . . in a timely manner prior to trial" so as to render the motion to suppress untimely, and that the defendant was not prejudiced by the late disclosure of the recording because the discovery "adequately covered the substance of it."

On appeal, the defendant argues that the trial court erred by finding that his motion to suppress was untimely, and that he was not prejudiced by the late disclosure of the recording, because the pretrial discovery provided by the

3

State "failed to disclose that he invoked his rights to silence and counsel and only continued speaking after prompting by the detectives." Thus, according to the defendant, the pretrial discovery "supplied no basis to move to suppress [his] post-invocation statements." We disagree.

Detective Kelley's report expressly stated that after Detective Kelley had not responded to the defendant's question regarding the laptop in a manner that he had wanted, "he replied by telling me that he wanted to wait for his lawyer." The report then asserted that the defendant "stated that he was willing to talk to Detective Nigohosian." Detective Kelley's affidavit stated that after the defendant was confronted with evidence that he was lying concerning the laptop, "he immediately stated he did not want to talk to me," but that he "agree[d] to continue speaking with Detective Nigohosian" and told Detective Nigohosian that he was "working with another kid from Hampstead." Thus, the report and affidavit, read together, establish grounds to assert that: (1) after the defendant was questioned about the laptop, he invoked his rights to silence and an attorney; (2) the defendant "agree[d]" to continue speaking with Detective Nigohosian after having invoked his Miranda rights; (3) Detective Nigohosian continued the interrogation; and (4) the defendant made a potentially inculpatory statement in response to the continued interrogation. Moreover, we agree with the State that the fact that the defendant "agree[d]" to continued interrogation suggests that the detectives had done something to prompt the "agreement." Further, because the defendant was present during the interview, he was aware of what had transpired. Under these circumstances, we cannot say that the trial court's findings that the defendant had the information necessary to file a timely motion to suppress, and that he was not prejudiced by the late disclosure of the recording, were clearly untenable or unreasonable to the prejudice of his case. Young, 159 N.H. at 336. Accordingly, we conclude that the trial court did not unsustainably exercise its discretion by determining that the motion was untimely. See Knight, 161 N.H. at 342.

Even if the trial court had erred by ruling that the motion was untimely, however, we agree with the State that any error in admitting the defendant's post-invocation statements – that he was working with someone from Hampstead, and that he wanted to know the amount of time he was facing – was harmless beyond a reasonable doubt. "An error is harmless if we can say beyond a reasonable doubt that it did not affect the verdict." State v. Ramsey, 166 N.H. 45, 47 (2014) (quotation omitted). The State bears the burden of demonstrating that an error is harmless, and evaluating whether the State has carried its burden involves considering the alternative evidence presented at trial and the character of the contested evidence. Id. "An error may be harmless beyond a reasonable doubt if the alternative evidence of the

4

defendant's guilt is of an overwhelming nature, quantity or weight, and if the contested evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt." Id. (quotation omitted).

In this case, the evidence established that at the time of the defendant's apprehension at the Lawrence pawn shop, he possessed several stolen items that had been taken from a home that had been burglarized earlier that day. He also possessed a BB gun and a package of BBs. For at least five of the burglaries with which the defendant was charged, including the burglary that had occurred earlier that day, the homes had been entered through windows that had been shot with BBs near the window latches. According to trial testimony, this manner of entry was unique. Ten days prior to his apprehension, the defendant had pawned a stolen item, which had been taken from a different burglarized home, at the same Lawrence pawn shop on the day that the burglary had occurred. Approximately two weeks before his arrest, he had pawned stolen items, which had been taken from yet another burglarized home, at two different pawn shops in Plaistow on the day after the burglary.

At one of the Plaistow pawn shops, the defendant had listed a phone number for a prepaid cellular telephone on a pawn slip. That phone was in his possession when he was apprehended at the Lawrence pawn shop. Records for the phone established that, at or near the times that each of the charged burglaries had occurred, the phone had accessed cellular towers in the vicinity of each of the burglarized homes. Additionally, it had been used to call: (1) four burglarized homes on the days that the burglaries occurred, including multiple calls within short periods of time to three of the homes; (2) other homes within the same neighborhoods as three burglarized homes within the same time frames as the burglaries; and (3) the business of one of the burglary victims, for whom the defendant had previously performed work, on the day before the burglary occurred. For several of these calls, the user of the phone had blocked its number.

Finally, the evidence established that the defendant was acquainted with three burglary victims, each of whom was associated with his employer. One of these victims had the same position as the defendant, and was on vacation at the time of the burglary. The burglary of another acquaintance occurred at the same time that the employer was holding its holiday party.

When balanced against all of this evidence, we agree with the State that the defendant's post-invocation statements were inconsequential. Ramsey, 166 N.H. at 47. At trial, he testified that other persons with whom he worked had used the phone in question, and that with respect to the stolen items he had pawned, he had pawned such items for other persons. He argued to the jury that he had not been charged with receiving or possessing stolen goods and,

thus, that the State was required to prove his involvement in the burglaries themselves. Within this context, therefore, the jury reasonably could have interpreted his post-invocation statements that he was working with someone from Hampstead and wanted to know how much time he was facing merely as an admission to receiving stolen property, a crime with which he ultimately was not charged, and for which Detective Nigohosian had just told him that he was being arrested. When compared with the overwhelming evidence that the defendant had engaged in the charged burglaries, we conclude that these statements could not have affected the verdict. Id.

Affirmed.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,**
**Clerk**