# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2014-0745, <u>State of New Hampshire v. Samuel J. Coffey</u>, the court on March 21, 2016, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case.

The defendant, Samuel J. Coffey, appeals his convictions, following a jury trial, on three counts of aggravated felonious sexual assault. <u>See</u> RSA 632-A:2, I (Supp. 2015). He argues that the Superior Court (<u>Houran</u>, J.) erred in: (1) excluding cross-examination of the victim regarding a prior allegation of sexual assault against another person; and (2) finding the evidence sufficient to support the conviction for anal penetration. We affirm.

The defendant first argues that the trial court erred in excluding cross-examination of the victim regarding a prior allegation of sexual assault that the victim had made against another person. The defendant did not intend to challenge the truth of the prior allegation. Rather, he argues that the evidence was relevant to his defense that the victim falsely accused him of sexual assault in order to deflect any negative attention she would otherwise have received for her excessive alcohol consumption on the night of the assaults, and to receive positive support from her friends and family. For the purposes of this appeal, we need not decide whether the trial court erred because, even assuming error, we agree with the State that any error was harmless beyond a reasonable doubt.

"An error is harmless if we can say beyond a reasonable doubt that it did not affect the verdict." <u>State v. Ramsey</u>, 166 N.H. 45, 47 (2014) (quotation omitted). "The State bears the burden of proving that an error is harmless." <u>Id</u>. (quotation omitted). "The evaluation of whether the State has met its burden involves consideration of the alternative evidence presented at trial and the character of the contested evidence." <u>Id</u>. (quotation omitted). "An error may be harmless beyond a reasonable doubt if the alternative evidence of the defendant's guilt is of an overwhelming nature, quantity or weight, and if the contested evidence is merely cumulative or inconsequential in relation to the strength of the State's evidence of guilt." <u>Id</u>. (quotation omitted).

The jury found the defendant guilty on three counts of aggravated felonious sexual assault: one count for fellatio when the victim indicated lack of consent, <u>see</u> RSA 632-A:2, I(m); RSA 632-A:1, V(a)(3) (Supp. 2015); one

count for sexual intercourse when the victim was physically helpless to resist, see RSA 632-A:2, I(b); RSA 632-A:1, V(a)(1) (Supp. 2015); and one count for penetrating the victim's "buttocks" with his penis when she was physically helpless to resist, see RSA 632-A:2, I(b); RSA 632-A:1, V(a)(5) (Supp. 2015).

The victim, a sixteen-year-old high school student, testified that she was at home with her parents on December 16, 2012, when the eighteen-year-old defendant contacted her on Facebook. The exchange on Facebook turned to the subject of drinking alcohol. The defendant inquired, "'Can I get you piss drunk?'" He offered to pick her up in his truck, find some alcohol at his grandparents' house, and "'go chill somewhere while you drink.'" In outlining his plan, the defendant asked the victim, "'[H]ow will we get you in your bedroom seeing you'll be really piss drunk?'" He then asked her, "'Are you able to hang out right now?'" When the victim responded affirmatively, the defendant replied, "'[L]et's get you drunk tonight.'"

The victim testified that it was snowing heavily, and that the defendant picked her up near her house. The defendant drove to his grandparents' house, and while the victim waited in the truck, he entered the house and returned with a grocery bag. He then drove onto a trail behind the parking lot of an apartment complex and turned off the engine. The victim testified that they engaged in "random" conversation, and the defendant mentioned that he always keeps a rifle in his truck. He then removed a bottle of beer from the grocery bag and told the victim to drink it. When she told him that she "didn't want to drink," he told her that he "wouldn't bring [her] home if [she] didn't drink." The victim testified that she was concerned that she would not be able to walk home from their location, especially in the snow, so she started drinking the beer. At the same time, she began to drink a Mike's Hard Lemonade "[b]ecause the beer was really disgusting."

When she finished the beer, the defendant threw the empty bottle out of the window of the truck and told her to drink another one. The victim continued to protest, but the defendant again told her that he would not bring her home if she did not drink. The victim testified that after consuming her second or third beer, the defendant told her "that if [she] did what he said[,] then he wouldn't have to hurt [her]." She recalled drinking five or six beers before the defendant told her that she could stop. She felt relieved. She testified that although she started to feel intoxicated after the second beer, after five or six beers, she "felt like [she] couldn't really move much, like [she] was impaired. Like [she] couldn't do anything."

The victim provided a detailed description of the assaults. After she finished the last beer, the defendant put his arm around her, even though, she testified, she did not want him to touch her. He then unzipped his pants, pulled them off, and pushed the victim's head down so that her mouth was around his penis. She testified that she kept trying to say "no," and that she

2

was able to say "no" once, but that she was "immobile" and unable to stop what was happening "because of all the drinks." She testified that the defendant put her hand on his penis and "moved it up and down himself." She testified that his penis became erect in her mouth, and that they continued in this position for five or six minutes.

The defendant then began handling the victim "[v]ery aggressively." She testified that she "felt like an object, like he was just kind of throwing [her] around." The defendant took the victim's clothes off, except for her underwear. He moved her underpants to the side, inserted his penis into her vagina, and started moving back and forth. He then "flipped" the victim over, so that she was "kind of like on [her] knees," with her head on the seat, and "tried sticking his penis in -- in [her] butt," into the "hole," but "[i]t didn't work."

Corroborating evidence supported the victim's testimony. Officer Pawlik, a police officer with the Somersworth Police Department, testified that he observed videotape from the hospital where the victim was taken, which showed the defendant lifting the "limp" victim out of his truck, carrying her into the emergency room, and placing her in a wheelchair. The following morning, the victim directed Pawlik to the location of the assaults on the trail behind the apartment complex. Pawlik observed numerous open and unopened beer cans and bottles, and a "Mike's Hard" container, along with two condoms and a condom wrapper. Lieutenant Kelly, who accompanied Pawlik and investigated the scene of the assaults, testified that he located a number of beer containers, both empty and full, an empty Mike's Hard Lemonade container, and a used condom. Pawlik testified that the variety of beers he found in the area corresponded to the varieties the victim stated she consumed the prior night. Officer Campbell testified that he went to the defendant's grandparents' residence and located a set of footprints that went from the front of the house to a rear porch, where there was access to several varieties of beer. Detective Sergeant Sunderland accompanied Campbell to the grandparents' residence, and he observed several varieties of beer inside the home, some of which matched the varieties found at the site of the assaults.

Carolyn Royer, a forensic toxicologist at the state crime laboratory, testified that the blood collected from the victim at approximately 1:00 a.m. on December 17, 2012, had a blood alcohol content of .16, which she considered to be high. Kimberly Rumrill, a forensic serologist at the state crime laboratory, testified that one of the condoms provided by the police contained the defendant's DNA on the interior surface of the condom and the victim's DNA on the exterior surface of the condom.

Although the defendant was not allowed to raise with the jury the victim's prior sexual assault allegation against another person, he was nevertheless allowed to argue, and he did argue in closing, that the victim falsely accused him of sexual assault in order to deflect any negative attention

3

she would otherwise have received from her family for her excessive alcohol consumption on the night of the alleged assaults, and to receive support from her friends, her school, and the police. In view of the overwhelming evidence of the defendant's guilt, we are convinced beyond a reasonable doubt that the impeachment value of the victim's prior sexual assault allegation was inconsequential in relation to the strength of the State's evidence of guilt, and would not have affected the verdict. See Ramsey, 166 N.H. at 48. We conclude, therefore, that the error, if any, was harmless.

The defendant next argues that the trial court erred in denying his motion to dismiss the anal penetration charge because the evidence was insufficient to prove penetration. "When considering a challenge to the sufficiency of the evidence, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State." State v. Francis, 167 N.H. 598, 604 (2015). "It is the defendant who bears the burden of demonstrating that the evidence was insufficient to prove guilt." State v. Thelusma, 167 N.H. 481, 487 (2015) (quotation omitted). "In reviewing the evidence, we examine each evidentiary item in the context of all the evidence, not in isolation." Id. (quotation omitted). "Further, the trier may draw reasonable inferences from facts proved and also inferences from facts found as a result of other inferences, provided they can be reasonably drawn therefrom." Id. (quotation omitted).

To convict the defendant on this charge, the State bore the burden to prove that the defendant engaged in sexual penetration with the victim when she was physically helpless to resist. See RSA 632-A:2, I(b). "'Sexual penetration'" is defined to include "[a]ny intrusion, however slight, of any part of the actor's body . . . into . . . [the] anal opening[ ] of the victim's body." RSA 632-A:1, V(a)(5).

The victim testified that the defendant was handling her "[v]ery aggressively," that after vaginal intercourse, he flipped her over, so that she was on her knees, with her head on the seat, and that he "tried sticking his penis in -- in [her] butt," into the "hole," but that "[i]t didn't work." When the prosecutor asked the victim if the defendant's penis made any contact with any part of her "butt," she stated, "On the inside, kind of." When the prosecutor asked the victim "what part of [her] butt was he trying to stick his penis into," she answered, "[t]he hole," and when asked what she meant in stating that the defendant "tried," she answered, "It didn't work." The registered nurse who performed a sexual assault forensic examination on the victim, testified that the victim reported to her that the defendant attempted to penetrate her anus and that, upon examination, she found the victim's anus to be "tender to palpation," which she found to be consistent with what the victim reported.

4

Based upon the victim's testimony that the defendant was handling her aggressively, that he was trying to stick his penis into the "hole" of her "butt," and that his penis made contact "[o]n the inside, kind of," but that "[i]t didn't work," coupled with the examiner's testimony that the victim's anus was tender to palpation, a rational juror could have concluded beyond a reasonable doubt that the defendant's penis did not merely contact the victim's anus but penetrated it, however slightly. See RSA 632-A:1, V(a)(5); see also State v. Walton, 146 N.H. 316, 319 (2001) (testimony of trooper, nurse, and doctor corroborating victim's testimony further supports conclusion that a rational jury could have found the defendant guilty of sexual assault beyond a reasonable doubt).

Affirmed.

DALIANIS, C.J., and CONBOY, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,**
**Clerk**