**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2016-0494, <u>State of New Hampshire v. Anthony Manuel Ortiz</u>, the court on August 16, 2017, issued the following order:**

Having considered the briefs and the oral arguments of the parties and the record submitted on appeal, the court concludes that a formal, written opinion is unnecessary in this case. The defendant, Anthony Manuel Ortiz, appeals his convictions, following a jury trial, on charges of aggravated felonious sexual assault (AFSA), <u>see</u> RSA 632-A:2, I(m) (2016), and criminal restraint, <u>see</u> RSA 633:2 (2016). He contends that the Superior Court (<u>Delker</u>, J.) erred by: (1) finding the victim's statements to a doctor admissible under New Hampshire Rule of Evidence 803(4) (amended 2017); (2) precluding the defendant from cross-examining the victim regarding her failure to respond to a particular text message from her boyfriend; and (3) sentencing the defendant on both the AFSA charge and the criminal restraint charge. We affirm.

<u>I. Admissibility of the Victim's Statements under Rule 803(4)</u>

<u>A. Relevant Facts</u>

Before trial, the defendant moved <u>in limine</u> to preclude Dr. Gwendolyn Gladstone from testifying about statements that the victim made to her on the ground that they constituted inadmissible hearsay. <u>See</u> <u>N.H. R. Ev.</u> 802 (amended 2017). The State countered that the victim's statements were admissible under an exception to the hearsay rule, Rule 803(4), which allows a declarant's out-of-court statements to be admitted when they were "made for purposes of medical diagnosis or treatment." <u>N.H. R. Ev.</u> 803(4). The trial court reserved ruling upon the issue until trial.

On the first day of trial, the victim testified that she saw Gladstone "[t]o see if [she] had any diseases or anything," such as a sexually transmitted disease, and to determine whether she was pregnant. On the second day of trial, the court allowed Gladstone to testify outside of the presence of the jury to determine whether her testimony about the victim's statements was admissible under Rule 803(4). Gladstone testified that she evaluated the victim on July 14, 2015, "to find out from her what had happened" so that Gladstone "could address any medical issues that might've come up as a result."

Gladstone testified that she starts her medical examinations by asking for "a general medical history." She then "proceed[s] to a more detailed history about

the reason for the visit." Gladstone testified that, when she asked the victim "about what brought her" to Gladstone's office, the victim "described . . . an assault that had happened . . . several weeks before." Specifically, the victim told Gladstone "that someone that she knew had sexually assaulted her, which . . . included penile vaginal penetration, and that she had also been strangled during the event." Gladstone testified that the victim described "some symptoms that she had had since then," including "having difficulty with intrusive thoughts" and "[v]aginal pain." Gladstone testified that she offered to examine "that part" of the victim's body, "specifically to look to see if there were signs of injury, since [the victim] had described pain that had gone on for several days, and to see if there were any signs of infection, because she didn't think that her -- the person had worn a condom at the time." The victim declined to be examined.

Gladstone also testified that she explained to the victim "that it's a good idea to be tested for pregnancy even if a person thinks they aren't pregnant, just to be sure," and, thus, she "recommended that [the victim] be tested." The victim was tested for pregnancy and "had medical testing for sexual infections, even though she had no symptoms." The trial court ruled that Gladstone's testimony about the victim's statements to her were admissible under Rule 803(4).

B. Analysis

Rule 803(4) constitutes an exception to the general rule that hearsay (an out-of-court statement offered for the truth of what it asserts) is inadmissible. See N.H. R. Ev. 801(c) (amended 2017). Rule 803(4) allows out-of-court statements to be admitted for the truth of what they assert when those statements are "made for purposes of medical diagnosis or treatment and describ[e] medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." N.H. R. Ev. 803(4). Such statements are admissible "regardless of to whom the statements are made, or when the statements are made." Id. In order for such statements to be admissible, however, the trial court must affirmatively find "that the proffered statements were made under circumstances indicating their trustworthiness." Id.

In State v. Roberts, 136 N.H. 731, 740 (1993), we interpreted Rule 803(4) as requiring a three-part test before a declarant's statements may be admitted under that hearsay rule exception. See State v. Munroe, 161 N.H. 618, 627 (2011). First, a court must find that the declarant intended to make the statements to obtain a medical diagnosis or treatment. Id. Second, the statements must describe medical history, or symptoms, pain, sensations, or their cause or source to an extent reasonably pertinent to diagnosis or treatment. Id. Third, the court must find that the circumstances surrounding the statements support their trustworthiness. Id.

2

On appeal, the defendant argues that the victim's statements fail to satisfy all three parts of the Roberts test. We accord the trial court considerable deference in determining the admissibility of evidence, and we will not disturb its decision absent an unsustainable exercise of discretion. Id. at 626. To demonstrate an unsustainable exercise of discretion, the defendant must show that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. Id. In determining whether a ruling is a proper exercise of judicial discretion, we consider whether the record establishes an objective basis sufficient to sustain the discretionary decision made. State v. Tabaldi, 165 N.H. 306, 321 (2013). We defer to the trial court's findings of fact, but review its conclusions of law de novo. See State v. Champagne, 152 N.H. 423, 430 (2005).

### 1. The Declarant's Intent

The defendant argues that the first part of the Roberts test is not met, in part, because the victim was referred to Gladstone by the child advocacy center. The defendant implies that Gladstone's examination of the victim was not for a medical purpose, but, rather, was to further a criminal investigation. See Munroe, 161 N.H. at 626. As we explained in Munroe, however, "[t]hese two purposes . . . are not mutually exclusive." Id.

Here, the evidence supports a finding that one of the purposes of Gladstone's examination was to diagnose or treat the victim's medical symptoms. As the defendant concedes, the victim saw Gladstone to determine whether she was pregnant or had a sexually transmitted disease. One of the reasonable inferences from the victim's testimony is that she was concerned about pregnancy and/or sexually transmitted diseases because she had been sexually assaulted. The fact that the victim then allowed Gladstone to test for pregnancy and sexually transmitted diseases supports the trial court's finding that the victim made her statements to Gladstone "in order to obtain an accurate diagnosis or proper treatment." State v. Gordon, 148 N.H. 710, 721 (2002) (quotation omitted). Contrary to the defendant's assertions, the fact that the victim declined to be examined physically by Gladstone does not compel a contrary conclusion. See id. at 720-21.

The defendant also asserts that the lack of temporal proximity between the alleged assault and Gladstone's examination precludes a finding that the victim made her statements for a treatment or diagnostic purpose. See Munroe, 161 N.H. at 628. However, a lack of temporal proximity is not dispositive of the issue of intent. Id. Indeed, Rule 803(4) expressly states that a declarant's statements are admissible "regardless of . . . when the statements are made." N.H. R. Ev. 803(4); see Munroe, 161 N.H. at 628.

The defendant further argues that, to show that the victim possessed the requisite intent, the State had to establish that she made her "statements understanding that they would further the diagnosis and possible treatment of

3

[her] condition," and that the State failed to make that showing. Munroe, 161 N.H. at 627 (quotation omitted). The State need only establish that the victim made her statements understanding that they would further diagnosis and possible treatment of her condition when the victim is a young child. See id. However, here, as the defendant admits, the victim is not a young child.

### 2. Subject Matter of Statements

The defendant asserts that the second part of the Roberts test is not met because the victim's statements regarding what took place during the alleged assault and the symptoms she suffered as a result of it were not "reasonably pertinent" to diagnosis or treatment. Id. (quotation omitted). We cannot say that the trial court unsustainably exercised its discretion by reaching a contrary conclusion. See State v. Soldi, 145 N.H. 571, 576-77 (2000). Here, Gladstone was presented with a victim of an alleged assault, who was concerned that she had become pregnant, or had contracted a sexually transmitted disease, from the assault. See id. at 576 (disagreeing with the defendant that the victim's statement that he grabbed her hair and shoulder and shook her was not pertinent to medical diagnosis or treatment because physician was presented with a victim of an assault and obtaining a history of how the injury took place was "vitally important in making an accurate diagnosis"). Given this context, the trial court reasonably determined that the victim's statements were reasonably pertinent to diagnosis and treatment.

### 3. Reliability

The defendant contends that the third part of the Roberts test is not met because: (1) the victim had no prior relationship with Gladstone; (2) the victim met with Gladstone weeks after the alleged assault; (3) Gladstone did not testify that the victim appeared upset or emotional during the visit; (4) the victim was referred to Gladstone by the child advocacy center; (5) the victim did not allow Gladstone to examine her; (6) the requested tests did "not rely at all on the nature of what allegedly occurred"; and (7) what the victim told Gladstone did not place the victim "in a bad light." Given all the testimony, and the reasonable inferences that may be drawn therefrom, we conclude that the trial court did not unsustainably exercise its discretion when it found that the proffered statements were made under circumstances indicating their trustworthiness. See Munroe, 161 N.H. at 628.

## II. Cross-Examination of the Victim

### A. Relevant Facts

The victim, who was eighteen years old at the time of the April 2016 trial, testified that the defendant was her boyfriend's long-time friend. She testified that the defendant's girlfriend used to be her best friend, and that the two

couples used to "hang out at each other's houses." According to the victim, on the evening of May 27, 2015, the defendant's birthday, the victim and the defendant spent time together with a group of friends at a mutual friend's home. The victim testified that, that night, she and her boyfriend were fighting with one another, and that the defendant and his girlfriend were not together because they "had been broken up" for "a week or two." After her recollection was refreshed by reviewing text messages, the victim testified that she and her boyfriend began their fight at approximately 5:30 p.m. on May 27. She testified that her boyfriend was upset with her because she was having a good time without him. After her recollection was refreshed, the victim further testified that, between 5:30 p.m. on May 27 and 3:40 a.m. on May 28, she and her boyfriend called one another approximately 157 times and texted one another 1,580 times. She testified that she and her boyfriend would call each other "over and over and over again" when there was no response.

The victim testified that, at approximately 2:30 a.m. on May 28, while she and her boyfriend were still in the midst of their "big fight," she accompanied the defendant to the defendant's home. There, they went to his bedroom to watch television. While the victim was watching television, she received, but did not respond to, telephone calls and text messages from her boyfriend.

The victim testified that the defendant asked her if she "wanted to make out with him." The victim testified that she said, "No." The victim testified that the defendant then "kind of like got on top of [her] and kept trying to kiss [her] and stuff." The victim responded by "moving [her] face around" so that he could not kiss her. The victim testified that the defendant "just kept trying and kept pulling [her] hair back," and that, at one point, "he put his hand around [her] neck really hard," so hard that she "couldn't breathe." The defendant then pulled down the victim's pants and underwear "really hard," and "forced himself on [her]." The victim testified that, by this, she meant that the defendant penetrated her vagina with his penis and "kept thrusting back and forth." The victim testified that "it just hurt really bad" and that she "kept . . . telling him to stop because he was dating [her] best friend" and she "was dating his best friend." She said that, after the defendant climaxed, she put on her clothes and left. The victim also testified that, after the assault, she tried to avoid the defendant and did not again find herself alone with him.

The defendant raised consent as a defense. His theory of the case was that he and the victim had consensual sexual intercourse on May 28, 2015, and again on May 31, 2015. Thus, during her cross-examination of the victim, defense counsel asked the victim several questions about what occurred on May 31:

> Q . . . And you remember that fight that you had [with your boyfriend] that night on the 31st?

5

A  The only thing I remember is that [my boyfriend] said he punched a sign or something.

    . . . .

Q  And [your boyfriend] and [the defendant] were not with you?

A  No.  [My boyfriend] was, like, walking around, I think.

Q  Okay.  And [the defendant] wasn't with you at first that night?

A  Yeah.

    . . . .

Q  And when you were fighting with [your boyfriend] that night, you were fighting over text message and calling each other again?

A  Yeah.

Q  And he accused you of drinking, right?

A  Yes.

Q  And you said, "No, I'm not drinking"?

A  Yeah.

Q  And he accused you of being at [the defendant's] house?

A  I don't know.

Q  You don't know?

A  Yeah.  Can I look at [the text message]?

    . . . .

Q  Okay.  Page 5,094.

The State objected to this "line of questioning."  Specifically, the State argued that the victim's testimony about the content of the text messages she received from her boyfriend constituted inadmissible hearsay.  Defense counsel argued that the content of the boyfriend's text message was not hearsay because it was not being offered for the truth of what it asserted — that the victim was at the defendant's house.  Defense counsel asserted that the victim's failure to

6

respond to her boyfriend's text message was relevant and "highly exculpatory" because it allowed the reasonable inference that the victim was, in fact, with the defendant. The State countered that the victim's failure to respond to her boyfriend's accusation "is not evidence that she's anywhere." The State asserted that, if the court "look[ed] at the series of texts, it goes on and on and on of [the boyfriend] saying all kinds of things to [the victim] that she's not denying or affirming."

Based upon its review of the "series of texts," the trial court stated that the victim's failure to respond to her boyfriend's accusation that she was with the defendant was not admissible substantively, but possibly could be admissible for impeachment purposes as a prior inconsistent statement. See N.H. R. Ev. 613(a) (amended 2017). The court ruled, however, that the victim's silence "is not an inconsistent statement." The court observed that, in the text messages that it reviewed, the victim responded to her boyfriend "intermittent[ly]." The court noted that in one of her text messages, the victim told her boyfriend, "You're blowing my phone up, just let it blow over." The court stated, "I don't think you can infer from that, that that's an inconsistent statement with her testimony that she wasn't alone with [the defendant] that day."

After the court's ruling, defense counsel continued to cross-examine the victim:

Q So we were talking about May 31st, right?

A Yeah.

Q And the fight you had with [your boyfriend] that night?

A Yeah.

Q And between 10:36 and 10:48, you didn't respond at all to [your boyfriend], right?

A Yeah.

Q Okay. And again between 11:03 and 11:19, you didn't respond to him at all?

A Yeah.

In her closing argument, defense counsel told the jury:

You might remember I asked [the victim] about two gaps she had in her communication with [her boyfriend] that night, May 31st. On both [May 28th and May 31st], she's fighting with her boyfriend,

both these nights she goes over to [the defendant's] house, both these nights there were gaps in her communication with [her boyfriend]. So these two were on -- they were texting each other every minute. So when there's gaps, 12 minutes, 16 minutes, they may not be significant for me, but it's significant for these two when they're fighting. Those gaps are there because that's when she was having sex with [the defendant].

B.  Discussion

On appeal, the defendant argues that the trial court erred by precluding him from cross-examining the victim "about what, if anything, she said to her boyfriend, . . . about being at [the defendant's] house on May 31, 2015." He raises this argument under the Confrontation Clauses of both the State and Federal Constitutions. See N.H. CONST. pt. I, art. 15; U.S. CONST. amends. VI, XIV. However, in the trial court, the defendant did not raise either a state or federal constitutional claim. Rather, he argued only that the victim's proposed testimony that she failed to respond to her boyfriend's text message accusing her of being with the defendant was not hearsay and should not be excluded on relevancy grounds. As the appealing party, the defendant has the burden of providing a record demonstrating that he raised his appeal issues before the trial court. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004). We decline to consider the defendant's constitutional arguments because he has failed to demonstrate that he preserved them for our review.

In his appellate brief, the defendant states:

The State's claim that the line of questioning was hearsay or called for speculation is wrong. If [the victim] did not answer [her boyfriend's] text accusing her of being at [the defendant's] house that is not hearsay or speculation. The trial court's ruling that, in order for the line of questioning to be relevant, it must be an inconsistent statement was erroneous.

We decline to consider the substance of these contentions. To the extent that the defendant intends them to comprise an argument that the trial court erred by finding that the victim's silence (1) was inadmissible substantively because it constituted hearsay that did not fall within an exception to the hearsay rule and (2) was inadmissible for impeachment purposes because it was not a prior inconsistent statement, we conclude that his argument is insufficiently developed for our review. See State v. Blackmer, 149 N.H. 47, 49 (2003). Moreover, the defendant has not provided, as part of the appellate record, the text messages upon which the trial court predicated its ruling.

8

III. Sentencing

The trial court sentenced the defendant to serve prison terms for both the AFSA and criminal restraint convictions.  On appeal, the defendant argues, under our plain error rule, see Sup. Ct. R. 16-A, that by so doing, the trial court violated his state constitutional guarantee against double jeopardy.  See N.H. CONST. pt. I, art. 16.  Although the defendant purports to raise his double jeopardy argument under both the State and Federal Constitutions, he has only briefed a state constitutional claim.  To the extent that the defendant intended to raise a federal constitutional claim, we consider that claim waived because it is not briefed.  See State v. Kelly, 159 N.H. 390, 394 (2009).

"For us to find plain error:  (1) there must be error; (2) the error must be plain; and (3) the error must affect substantial rights."  State v. Mueller, 166 N.H. 65, 68 (2014) (quotation omitted).  "If all three of these conditions are met, we may then exercise our discretion to correct a forfeited error only if the error meets a fourth criterion:  the error must seriously affect the fairness, integrity or public reputation of judicial proceedings."  Id. (quotation omitted).  The plain error rule "is used sparingly, however, and is limited to those circumstances in which a miscarriage of justice would otherwise result."  Id. (quotation omitted).  "We have looked to the federal plain error analysis in applying our plain error rule."  State v. Rawnsley, 167 N.H. 8, 11 (2014) (quotation omitted).  Because we conclude that there was no error, we need not reach the remaining prongs of the plain error analysis.

The Double Jeopardy Clause of the State Constitution provides three double jeopardy protections:  (1) protection against subsequent prosecution for the same offense after acquittal; (2) protection against subsequent prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense.  See State v. Carr, 167 N.H. 264, 273 (2015).  The defendant raises a multiple punishments claim.  Such claims "come in two varieties":  (1) the "so-called 'double-description' cases, in which the issue is whether two statutes describe two separate offenses or are merely different descriptions of the same offense"; and (2) the "'unit of prosecution' cases in which the problem is not that the same course of conduct is proscribed by more than one statute but that a defendant's continuing course of conduct is fragmented into more than one violation of a single statutory provision."  State v. Ramsey, 166 N.H. 45, 51 (2014) (quotations and brackets omitted).  This case is of the first variety.

In "double-description" cases, we have, generally, examined "whether proof of the elements of the crimes as charged will require a difference in evidence." Id.; see also State v. Locke, 166 N.H. 344, 351, 352-53 (2014) (noting that our cases have not consistently applied our "same evidence" test and "invit[ing] parties in future cases to ask us to reconsider our double jeopardy jurisprudence" under the State Constitution (quotation omitted)).

The defendant argues that, to prove the criminal restraint indictment as charged, "the State relied on all the same facts it used to prove the [AFSA] charge," and that "once the State proved [that he] committed the Criminal Restraint charge, no additional evidence was necessary in order to prove the elements of the AFSA charge." We disagree.

The criminal restraint indictment alleged that the defendant (1) knowingly (2) "[c]onfined [the victim] . . . in his bedroom" (3) "[u]nlawfully in circumstances that exposed [her] to risk of serious bodily injury . . . [b]y holding [her] down and sexually assaulting her." The AFSA indictment alleged that the defendant (1) knowingly (2) "[e]ngaged in sexual penetration with [the victim]" (3) "[w]hen, at the time of the sexual assault, [she] indicated by speech that she did not freely consent to the performance of the sexual act . . . [i]n that she said 'no', or words to that effect."

As charged, each offense requires proof of at least one fact that the other does not. For instance, the criminal restraint indictment requires proof that the defendant confined the victim and that he exposed her to the risk of serious bodily injury, while the AFSA charge does not require proof of these facts. Similarly, the AFSA charge requires proof that the defendant sexually penetrated the victim, while the criminal restraint charge does not require such proof.

Contrary to the defendant's assertions, the two charges are not the same for double jeopardy purposes because they both require proof that he sexually assaulted the victim. In fact, the AFSA charge requires proof of sexual penetration. Proof that the defendant sexually assaulted the victim without penetrating her would not suffice to convict him of the AFSA charge, but would suffice to convict him of the criminal restraint charge.

Because proof of the elements of the two crimes as charged required a difference in evidence, we conclude that they are not the same for double jeopardy purposes. See Ramsey, 166 N.H. at 51-52. Accordingly, the trial court did not violate the defendant's state constitutional guarantee against double jeopardy when it sentenced him to prison on both charges.

The defendant also argues, under our plain error rule, see Sup. Ct. R. 16-A, that his prison sentences violated the common law doctrine of merger. See Ramsey, 166 N.H. at 50. As with the defendant's state constitutional claim, we find no error, and, thus do not consider the remaining prongs of our plain error analysis.

We have acknowledged that "[i]n the context of multiple sentences stemming from a single act, there should be no difference between a double jeopardy analysis and a common law merger analysis; double jeopardy and merger are identical in this context and the operative consideration in both is whether the two offenses are the same or different." Id. (quotation, brackets, and

ellipsis omitted).  Here because, as previously discussed, the evidence required to prove the criminal restraint and AFSA charges is different, the two charges did not merge.  See id. at 51-52.  Accordingly, the trial court did not violate the common law doctrine of merger by sentencing the defendant on both charges.

Any issues that the defendant raised in his notice of appeal, but did not brief, are deemed waived.  See Blackmer, 149 N.H. at 49.

Affirmed.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.


**Eileen Fox,**
**Clerk**